**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 26 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

AARON FELIX, SR.; ABILENE
FLETCHER; ADA STUMP;
ADELINE HATHORN; ALBERT
SHULER; ALFRED WHITLOW;
ALICE M. NEALEY; ALICE WOOD;
ALLEN THREATT, III; ALZETIA
BRUNER; AMELIA WARRIOR;
ANA M. LASHLEY; ANETTA
WICKWARE; ANGELA JONES;
ANN FINK; ANNA REDD; ANNA
SMITH; ANNIE PRINTERS;
ARMANDINA SANDERSON;
ARTHUR FLYNN; B. K.
IMMENSHUH; BARBARA E. HALL;
BARBARA MANUEL; BARBARA
RUST; BECKY POST; BENNETH
BRASWELL; BERTHA REEVES;
BETTY BELCHER; BETTY
BRIDGES; BETTY CHAPMAN;
BETTY D. PRIEST; BETTY
JACKSON; BETTY JONES; BETTY
SCHUNEMAN; BETTY TOOTLE;
BILL W. MOORE; BILLY
SUMMERS; BOBBIE JEAN ALLEN;
BOBBY GILLESPIE; BOND W. LEE;
BONG CHU CHONG; BONNIE
IRVING; BRENDA ANDERSON;
BRENDA KING; BURLENE
MUNRO; C. WAYNE FAUCETT;
CALVIN PRATER; CALVIN W.
MINNICK, SR.; CAN T. PHAN;
CAROL DETTMAN; CAROL DILL;
CAROLL DARNALL; CAROLYN
BUCKNER; CAROLYN FOX;

No. 03-6112

CAROLYN J. WILLIAMS; CAROLYN LAWRENCE; CAROLYN YVONNE LARSEN; CARRIE J. ROBERSON; CARROLL L. HUNTER; CECIL BLAKE; CECIL BROWN; CHARLES H. BECK; CHARLES O. SESTAK; CHARLES W. MERRILL, JR.; C.C.K. BRADSHAW; CLARA WILLIS; CLARENCE YAHOLA; CONNIE DUNN; CORINA HAPKE; CORNELIOUS ANDERSON; CRYSTAL LONG; CYNTHIA A. WILEY; DALE ROBINSON; DARLENE COLBERT; DARLENE WILLIAMS; DARYL KINNETT; DAVID BURBEE; DAVID DEERINWATER; DAVID LYNCH; DEBORAH COFFEY; DEBORAH MCCOOL; DEBORAH REEVES; DEIDRA KUBAT; DELORIS RICHARDSON; DELVIN REECE; DIANA PEPPERMAN; DIANE TRAYLOR; DIANA DEWEY; DIANE INSOGNA; DON CRABTREE; DON MCKENZIE; DONALD E. DYER; DONALD R. MCNEIL; DONALD WANZER; DORIS LESLEY; DOROTHY BOWENS; DOROTHY BUSH; DOROTHY FREEMAN; DOROTHY NICHOLS; DORIS DANIELS VOORHIES; DOUGLAS R. ALLEN; DOYLE D. MCENTIRE; DU PHAM; DUANE YECK; DUC TRAN; DUNG LAM; DUOUNG HOANG; EARL MILLIUS; EARL TAYLOR; EIKO RENDON; ELI WARRIOR, SR.; ELISE N. CECIL; ELIZABETH A. WHELAN; ELVONDA PRESLEY;

EMMA H. OLDS; EMMA L. THOMAS; ERLINDA C. WISHON; ERRA TODD; ESTHER B. LAMPKIN; ESTHER BALLARD; ETTA FORSHEE; EUNICE F. BERRY; EVELYN NICKELS; FAYONA B. WILSON; FLORA THOMAS; FLORENCE HARRIS; FLOYD T. HYDEN; FRAN HARKER, SR.; FRANK WILSON; FRED TINSELY; G.E. HETTEL; GAIL K. KITCHENS; GAIL V. HILL; GARY JORDAN; GARY WINTER; GEORGIA LEE JONES; GEORGIA MAE BRUNO; GERALD R. OLIVER; GERTRUDE KROUTIL; GEYRL FORCE; GLADYS M. FREDRICK; GLEN EADS; GLENDA ROSALES; GLENNA WINTER; GLORIA HICKS; GLORIA HIGH; GRACE E. HILL; HAN O.K. PARK; HANELORE MYERS; HAROLD KENNEDY; HAROLD L. BREWSTER; HAZEL MARSH; HELEN SMITH; HERBERT WARD; HERMAN HOLLAND; HOWARD L. JENNINGS; HUE VU; HUNG VIETVU; HYAN ANTHONY; IDA P. HUBBARD; IMOGENE HARRISS; INELLA J. COOPER; ITTY V. EYADIEL; JACK NOWLIN; JAMES L. ROBINSON; JAMES E. HARRIS; JAMES E. HUBBARD; JAMES E. ROBERSON; JAMES FAIRLESS; JAMES G. HENAGAR; JAMES TAYLOR; JANE WILLIAMS; JANE WOODARD; JANICE FELIX; JAQUELINE PONDER-LEWIS; JAYNE WARE; JEAN ELZEY; JEAN M. KAY; JEANNIE HICKS; JERRYL

M. ASHLEY; JERRY CARL BRYANT; JERRY L. CRAWFORD; JERRY ENNIS; JERRY GLENN MILLER; JERRY SHROPSHIRE; JERRY W. HAMILTON; JEWEL BOYLES; JIM CORBIN; JIMMIE FLENNER; JO HOMAN; JOANN CHANDLER; JOAN HILL; JOAN SAWYER; JOHN A. STEWART; JOHN B. STEWART; JOHN E. MILLER; JOHN HILDEBRAND; JOHN JONES; JOHN M. PAGE; JOHN VARUGHESE; JOHN B. SEILAS; JOSEPHINE WYATT; JOYCE ANN MILLER; JOYCE J. PAYNE; JOYCE PALMER; JOYCE WILSON; JUANITA HARRIS; JUANITA KNAPP; JUDITH BURNHAM; JUDY RUCKER; JULLIA  L. TEDDER; CLIFF WHEELER; K. SUK LEE; K.C. GEORGE; K.T. LAM; KAREN C. WILKINS; KATHERINE BELLIS; KATHERINE KILBY;  KATHERINE NICHOLS; KAY C. ROWLAND; KAYE RUSSELL; KENNETH KORTEMIEIER; LADONNA PETERSON; LARUE RICHARDSON; LAVONDA  WALDRON; LARRY BASE; LARRY JORDAN; LARRY R. FOX; LAURA  SCOTT-KEEFER; LAWANA K. WEEKS; LE HUU LE; LEE ANN  WITTENBERG; LEE GORRELL; LENA MITCHELL; LEO STEEL, JR.; LEONA CHICORASKE; LEONARD HUMPHRIES; LEROY GILLESPIE;  LETRICIA HIGGS; LINDA ALBERS; LINDA ALLEN; LINDA CANTRELL; LINDA

KLOFKORN; LINDA L. STEWART; LINDA MAESTAS; LINDA R. ZACHARY; LINDA STRAUSS; LINDA THATCH; LINDA WARDEN; LINNIE PHILLIPS; LOIS JOHNSON; LONNIE R. LEDFORD; LORETTA BATTLE; LORETTA HILTON; LORETTA RIDINGS; LOUIS A. SCHUNEMAN; LOUISE HAMMAN; LOUISE HAMPTON; LYNDA C. CURRIN; LYNN STEWART; MAC WINKLER; MARGARET CRAWFORD; MARGARET DARNALL; MARGARET  GROCE; MARGARET L. CURTIS; MARGARET L. JOHNSON; MARY MCELYEA; MARGARET TAYOR; MARIA TIDWELL; MIRIAM R. EDWARDS; MARILYN M. KORNMAIER; MARK WILLIAMS; MARLENA DENNIS; MARSHA W. CARTLEDGE; MARTHALENE DUNLAP; MARTINA PAGE; MARVA AKINS; MARVIN G. GILLILAND; MARIANNE B. PONDER; MARY C. JOHNSON; MARY DAVIS; MARY DICK; MARY HOBBY; MARY HOUSNER; MARY KELLER; MARY L. CURTIS; MARY LOU MCCALL; MARY MEEHAN; MARY ROY; MARY SMILEY; MARY WANZER; MAT THI CAO; MATTIE KINNETT;  MCHYL L. SUMMERS; EVERETT CONLEY; MELBA MOORE; MICHAEL MARLOW; MICHAEL ROBERTSON; MILDED DREW; MOLLY HARRELL; MONA STRAUGHN; MORRIS SCOBEY, JR.; NANCY

HOLMES; NANCY STATEN; NAOMI CHAPMAN; NAZIM ABDUL-LATIF; NELDA BOHN; NHAN TRAN; NHI THI TRUONG; NHUNG NGUYEN; NUMER NORRIS; OMER G. FLOYD, JR.; ORALEE KEMP; PAMELA HENAGAR; JOHN JONES; PAT LYTAL; PATRICIA RODGERS; PAT WALLACE; PATRICIA BARBER; PATRICIA EWING; PATRICIA HARRELL; PATRICIA WOODS; PATRICK FORSEE; PATRICK PETERSON; PAULA SAGAL; PEARLIE MCKISSIC; PEARL WILSON; PEGGY  ANDERSON; PEGGY BROOM; PHAN NGUYEN; PHYLLIS NUTT; RACHAEL EYADIEL; RACHEL TOBEY; RAYMOND MITCHELL; RENA BENOIT; RHELDA NYE; JACKIE CANTRELL; RICHARD BENOIT; RICHARD L. HALL; RITA J. FOSTER; ROBERT C. SHUE; ROBERT HOLMES; J. ROBERT MUNRO; ROBERT WYATT; ROGER D. CRAFT; RONALD AVANTS; RONALD O. STAFFORD; RONALD JAGOSH; RONALD NORRIS; RONALD WANZER;  RONNIE TRAYLOR; ROSETTA WARRIOR; ROY KLEPPER; RUBY BELSHE; RUBY TIDMORE; RUSSELL GALLOWAY; RUSSELL OWENS; RUTH BOYER; RUTH LYNCH; RUTHIE O. KING; SAMARION JACKSON; SANDRA EAST; SANDRA HUMPHREY; SANTHOSH PUNNOSE; SEUNG MOON;

SHERRY M.RUSSELL; SHIRLEY ALLEN; SHIRLEY CONRAD; SHIRLEY GLOVER; SHIRLEY GREEN; SHIRLEY GRIFFIS; SHIRLEY HINES; SHIRLEY NESS; SHIRLEY PRINCE; STANLEY E. GOOCH; STELLA ZARAGOSA; SUSAN KOUTS; SUSAN PANNELL; SUSAN WILSON; SYLVIA BARTEMY; THAU DINH TRAN; THELMA LOGAN; THURLOW TRIPP; TOM ANDERSON; TOMMY GREEN; TUYEN Q. NGUYEN; UYEN NGUYEN; VALERIE H. WOOD; VERA CLARK; VINH VAN CAO; VIRGINIA LEDFORD; VIRGINA RODRIGUEZ; W. TERESA CHILDS; WALTER EISENMAN; WALTER GILPEN; WANDA AULTMAN; WANDA CARSON; WANDA F. SMITH; WANDA GALLANT; WANDA JORDAN; WANDA LOWRY; WANDA MACK; WARREN C. FISHER; WILLA PRINCE; WILLIAM HOSTETLER; WILLIAM J. WALTON; WILLIAM D. ROY; WILLIS JONES; WILMA LONG; WILSIE KOZAK; YOUNG W. KANG; YVONNE WHITE; REGINA ALLENSWORTH; EMERALD NESS; JUDITH IRENE WILLIAMS; JERRY M. GARTON; J. GUADALUPE SANCHEZ; RAYMOND MACK; EVELYN B. WARE; LINDA MARCHANT; RICHARD SETZER; ANN NALLEY; ARVILLA BISSELL; JOHN D. CANNEDY; RHEA COLLIER; JO ANN CHANDLER; HUONG N. DO; ROBERT GIBBS;

ROY T. JOHNSON; KIET TUAN LAM; MARY J. LAMBERT; RON F. MCNIELL; MELBA W. MERRILL; JOYCE J. PAYNE; CAN THAN PHAN; LADONNA PETERSON; ELVONDA PRESLEY; SHERRINE RANDALL; SANDRA REEVES; H. CAROLYN RICHARDSON; LINDA B. RICHARDSON; VIRGINIA LOUISE REECE; MARSHA SHANKS; TONY SOLIZ; GENINE STEWART; MONA L. STRAUGHAN; KENNETH TOOTLE; PETER T. VU; PEARLINE D. WHITE; ETHEL JACKSON; LINDA BIRKES; RANDY BROOKS; CHARLOTTE BROOKS; JERRY W. BUSER; CATHERINE A. BELLIS; SUN KI LEE; MYRTLE L. HENSON; BILL EISENMAN; TUAN VINH; CARROLL LEON HUNTER; SHARON L. STEWART; SUSAN PAK; DU V. PHAM; SAMUEL J. BUCKNER; JOSEPH KUNNATH; ALICE WILLIS,

      Plaintiffs - Appellants,

v.

LUCENT TECHNOLOGIES, INC., a Delaware corporation,

      Defendant - Appellee.

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-02-289-L)**

James A. Ikard, Oklahoma City, Oklahoma, for Plaintiffs-Appellants.

Allegra R. Rich, (Charles C. Jackson, Sari M. Alamuddin, Deborah S. Davidson, with her on the brief) Seyfarth Shaw LLP, Chicago, Illinois, for Defendant-Appellee.

Before **EBEL, ANDERSON**, and **McCONNELL**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiffs, a group of former employees of Defendant Lucent Technologies, Inc. ("Defendant"), sued Defendant in state court for fraud arising out of alleged misrepresentations made in encouraging Plaintiffs to take an early retirement benefits package. Defendant removed the case to federal court on the basis of complete preemption under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"), and then moved to dismiss. Plaintiffs filed a motion to remand, which was denied by the district court on the basis of ERISA complete preemption. Plaintiffs appealed this order, and Defendant now asserts the same grounds for removal jurisdiction as it did below, in addition to arguing for complete preemption under §§ 7-8 of the National Labor Relations Act ("NLRA").

Exercising jurisdiction over the district court's order under 28 U.S.C. § 1291, we conclude that Plaintiffs' state law fraud claims are not completely

- 9 -

preempted by ERISA, the LMRA, or the NLRA.  Accordingly, we REVERSE and

REMAND with instructions to remand to state court.


**BACKGROUND**

Plaintiffs, a group of former employees of Defendant Lucent Technologies,

Inc., worked at a manufacturing facility in Oklahoma City known as the

Oklahoma City Works ("OKCW").  In their Fourth Amended Petition ("FAP"),

Plaintiffs alleged the following[1]:

> Because of a series of substantial financial reversals Lucent determined to sell off its manufacturing facilities including OKCW.  It communicated to its workforce at OKCW its intent to restructure and engaged in a series of highly-publicized attempts to sell its manufacturing plants or merge with other similar companies.  In an effort to make it more attractive to purchasers/merging companies Lucent determined to reduce the number of long-term senior employees at the OKCW.

> On February 19, 2001, Lucent entered into a Memorandum of Agreement with the International Brotherhood of Electrical Workers ("IBEW") System Council EM-3 whereby OKCW employees that were retirement-eligible would retire in exchange for receipt of a payment equivalent to 110% of the amount of termination allowance to which the employee would be entitled if the employee was laid-off for lack of work up to a maximum of 32 years' service (under the applicable IBEW collective bargaining agreements) plus a "special pension benefit" in the amount of

---

[1]Because this is an appeal from an order granting a motion to dismiss, we accept all allegations in the plaintiff's complaint as true.  See Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  For the purposes of removal, Defendant also accepted as true Plaintiffs' allegations.  Because these allegations are relatively concise and much turns on our characterization of the nature of these allegations, we quote most of the complaint above.

$11,000 which represented the amount to which the employee was otherwise entitled under a pending National Labor Relations Board award against Lucent. These payments were to be made out of the over-funded portion of the Lucent (originally AT&T[2]) pension plan funded by the employees at the OKCW. Additionally, for those OKCW employees that were not then retirement-eligible, Lucent proposed to provide a transitional leave of absence by adding 5 years to the age and/or service to make the employee pension-eligible and to reduce to the extent possible any pension discount for early retirement. Acceptance of Lucent's offer had to be made by May 29, 2001, and an employee accepting the offer would leave the OKCW roll on June 30, 2001.

Written material was distributed to the employees at the OKCW and meetings were held with Lucent representatives at which these benefits were outlined. Based upon information communicated to its officers and representatives by Lucent, the IBEW locals at the OKCW also provided information to the employees.

At each meeting attended by each individual plaintiff, it was stated by Lucent's authorized representatives that the offer being made by Lucent was a one-time, non-negotiable, final offer that was a take-it-or-leave-it proposal and that any delay by any employee in accepting the offer would not result in any additional benefit. To the contrary, it was emphasized at such meetings that failure to accept Lucent's offer was risking the benefits being offered since Lucent might file bankruptcy or merge with another company.

In a newsletter distributed by IBEW Local 2021 on March 15, 2001, the union President stated:

> For those of you who feel there may be even more offered if you wait, I assure you there will not be any additional incentives for retirement.

In reliance upon the representations made by Lucent (and reiterated by union officials) that the offer being made was a take-it-or-leave-it . . . offer

---

[2]Defendant was a spin-off from AT&T.

and that delaying retirement not only would not gain the employee additional benefits, but instead might jeopardize all of these benefits, over 1,000 eligible employees, including all of the plaintiffs herein, timely accepted the offer, retired, and left the OKCW roll on June 30, 2001.

Subsequently, Lucent entered into an agreement with Celestica, Inc., a Canadian corporation involved in the manufacture of computer and telecommunications equipment whereby Celestica, Inc. was to act as a contract manufacturer and take over the operation of the OKCW and hire as its employees certain remaining OKCW Lucent employees on November 30, 2001.

Contrary to the representations made by Lucent, on October 1, 2001, Lucent agreed to pay retirement-eligible (and those made eligible by the 5+5 transitional offer) employees still on the OKCW roll benefits identical to those paid to the plaintiffs **plus** an additional payment of a "special one-time pension benefit" by Lucent of $15,000. . . .

Lucent intentionally misrepresented to each plaintiff the nature of the offer as described . . . above with the intent to induce each plaintiff to rely upon such misrepresentations and to change their respective positions to their detriment. Rather than a "one-time offer", Lucent knew at the time such misrepresentations were made that additional "sweeteners" would be made to reduce the number of senior employees in the OKCW workforce.

Each plaintiff did rely upon such misrepresentations in making the decision to retire on June 30, 2001. No plaintiff had the opportunity or ability to discover the truth concerning such misrepresentations.

Plaintiffs requested as damages the additional $15,000 benefit that was later offered to the remaining employees, the value of an additional year of service that was lost by accepting the June 30 retirement date,[3] and punitive damages.

---

[3]Specifically, Plaintiffs alleged that "a significant number of plaintiffs with a short time to their respective anniversary dates lost an additional year of service

(continued...)

Defendant removed the case to federal court on the basis of "complete preemption" under ERISA and the LMRA, and then moved to dismiss for failure to state a claim. Plaintiffs moved to remand the case back to state court, arguing that their claims were not completely preempted and that the federal district court thus lacked subject matter jurisdiction. In the same order, the district court denied Plaintiffs' motion to remand and granted Defendant's motion to dismiss, relying exclusively on complete preemption under ERISA. Plaintiffs now appeal this order.[4]

## DISCUSSION

**Standard of Review:**

We review de novo the question of whether Plaintiffs' state law claims are completely preempted. See Conover v. Aetna US Health Care, Inc., 320 F.3d 1076, 1077 (10th Cir. 2003), cert. denied 124 S. Ct. 2902 (2004); Garley v.

---

[3](...continued)
by accepting the June 30th retirement date. Each lost year was worth as much as $4,000 in the special pension payment plus a reduction in the amount of the respective pension over the life of each pension."

[4]Defendant points out that Plaintiffs' Notice of Appeal only designates the order granting dismissal, not the order denying remand. Defendant then concludes that the judgment on the motion to remand may not be properly before us, even though both judgments were contained in the same order by the district court. However, because the issue in the motion to remand is whether federal courts have subject matter jurisdiction over this case, we must address it *sua sponte*. See Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1499 (10th Cir. 1994).

Sandia Corp., 236 F.3d 1200, 1206-07 (10th Cir. 2001) ("Whether state law is preempted by federal law is a conclusion of law which we . . . review *de novo*. We review a denial of a motion to remand a claim for lack of removal jurisdiction *de novo*.") (citations omitted).

We also review de novo a dismissal for failure to state a claim. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**Analysis:**

**I.      Were Plaintiffs' fraud claims properly removed on the basis of "complete preemption" under ERISA?**

Plaintiffs argue that the district court erred in denying their motion to remand and dismissing the case for failure to state a claim. Specifically, Plaintiffs argue that, contrary to the district court's holding, their state fraud claim was not "completely preempted" by ERISA.[5] We agree with Plaintiffs.

---

[5]The Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001 *et seq*., is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). It covers both employee pension plans and welfare plans that meet its definitions under 29 U.S.C. § 1002(1)-(3). Id. at 90-91. The parties in the instant case do not dispute that Defendant's pension plan at issue is covered by ERISA.

ERISA "imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility. . . . ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe

(continued...)

- 14 -

Important to understanding the propriety of removing the instant case is the distinction between "conflict preemption" under § 514 of ERISA and "complete preemption" under § 502(a) of ERISA. Because these two concepts are often confused, as they were in the instant case, we provide an explanation of both before we analyze the district court's denial of the motion to remand here.

## A.    ERISA § 514 Conflict Preemption

Section 514 of ERISA, codified at 29 U.S.C. § 1144, contains an express preemption provision that provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (2000). The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" Egelhoff v. Egelhoff, 532 U.S. 141, 146 (2001). "But at the same time, [the Court has] recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'" Id. (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)).

---

[5](...continued)
discrimination in the provision of employee benefits." Id. (citations omitted).

- 15 -

The Court has held that a state law "relates to" an ERISA plan, and is thus preempted under § 514, "if it has a connection with or reference to such a plan." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97 (1983).  Further, the Court has

> cautioned against an uncritical literalism that would make pre-emption turn on infinite connections.  Instead, to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.

Egelhoff, 532 U.S. at 147 (quotations and citations omitted).  This preemption provision does not apply "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability."  District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.1 (1992) (quotations and citations omitted); see also Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078, 1084 (10th Cir. 1994) (en banc) (same).

### B.    "Complete Preemption" Under ERISA

The Supreme Court has explained, "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant.[6]  Absent diversity of citizenship, federal-question jurisdiction is

---

[6]Title 28 U.S.C. § 1441 provides:

(continued...)

required." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. The general rule is that a federal defense, even one relying on the preclusive effect of a federal statute, is not enough to authorize removal to federal court. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003).

However, the Supreme Court has recognized an exception or "independent corollary" to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. Caterpillar, 482 U.S. at 393. Among the first cases to recognize this doctrine was Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968), where the Court held that the state court suit to enjoin a union strike under state law was properly removed because it arose under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which grants federal

---

[6](...continued)

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

jurisdiction over suits for violations of collective bargaining agreements. Id. at 560. The Court later characterized Avco as the wellspring of the complete preemption doctrine:

> The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law [and is thus removable].

Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23-24 (1983) (quotations and footnotes omitted).

In Franchise Tax Board, the Court explained that whereas § 301 of the LMRA created a cause of action under which the Avco plaintiff could enforce the LMRA in federal court, the parallel enforcement provision of ERISA, § 502(a) (codified at 29 U.S.C. § 1132(a)), did not cover the state government plaintiff's claim to enforce tax levies against trust funds held by an ERISA trustee. The state taxing authority was not a "participant" or "beneficiary" of an ERISA plan and thus was not given a cause of action under § 502(a). Id. at 24-25. Thus, the claims before the Court did not "arise under" § 502(a) of ERISA. Id. at 25. The Court held that because ERISA conflict preemption under § 514 alone is not sufficient to support removal of a well-pled complaint alleging a state cause of

action, and because the plaintiff before it could not have brought its claim as a federal cause of action under the civil enforcement provision of ERISA (§ 502), there was no complete ERISA preemption and removal was improper.  Id. at 25-27.

Four years later, the Supreme Court addressed the question left open in Franchise Tax Board: whether a state law claim that *does* fall within the scope of section 502(a) of ERISA is removable to federal court under the doctrine of complete preemption.  In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987), the Court answered the question in the affirmative, holding that the complete preemption doctrine allows the removal of state actions that fall within the scope of § 502(a), ERISA's civil enforcement provision.[7]  Id. at 64, 67. Noting that the "language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA [at issue in Avco]," the Taylor Court found that ERISA manifested sufficient congressional intent to recharacterize state law claims that fall within the scope of § 502(a) as federal claims subject to removal.  Id. at 65-66.

----

[7]Section 502(a)(1) provides a cause of action to any plan beneficiary or participant to recover benefits due under the terms of a pension plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan.  29 U.S.C. § 1132(a) (2000).

The Court recently further refined the doctrine of complete preemption under ERISA in Aetna Health Inc. v. Davila, – U.S. – , 124 S. Ct. 2488 (2004), where it phrased the test as follows:

> [W]here the individual is entitled to such [claimed] coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

Id. at 2496 (citation omitted).  In Davila, the Court held that a claim brought under a separate statute for drug benefits under an ERISA plan was completely preempted because the claim was not independent of the ERISA plan.  Id. at 2496, 2498.

In sum, the preemptive force of § 502(a) of ERISA is so "extraordinary" that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule.  Taylor, 481 U.S. at 65.

C.    **Distinction Between Preemption and Complete Preemption in the Context of ERISA**

Although courts and parties often confuse § 514 preemption with § 502(a) complete preemption, the Supreme Court has held that the two are distinct concepts, with only the latter supporting removal.  In Taylor, the Court first

explained that "federal pre-emption is ordinarily a federal defense to the plaintiff's suit," and thus is insufficient grounds for removal. 481 U.S. at 63. The Taylor Court stated that there was no dispute that the plaintiff's state law claims were preempted under § 514 of ERISA in the case before it, but that the remaining question was "whether or not the *Avco* principle can be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by § *502(a)(1)(B)* as an action arising under federal law." Id. at 64 (emphasis added).

The Court next pointed out that it had previously held in Franchise Tax Board, 463 U.S. at 25-27, that "ERISA pre-emption [under § 514], without more, does not convert a state claim into an action arising under federal law." Taylor, 481 U.S. at 64. "The [Franchise Tax Board] court suggested, however, that a state action that was not only pre-empted by ERISA [under § 514], *but also* came within the scope of § 502(a) of ERISA might fall within the *Avco* rule [of complete preemption]." Id. (emphasis added, quotations omitted). The Court then found that state claims falling within the scope of § 502(a) (as contrasted with those state claims that merely "relate to" plans under § 514) were indeed completely preempted and thus removable. Id. at 66. The Supreme Court recently affirmed this approach in Beneficial National Bank, where it held that a federal statute completely preempts a state law cause of action when the state

- 21 -

claim "comes within the scope of that [federal] cause of action," discussing § 502(a) of ERISA. 539 U.S. at 8.

We have explained that ERISA preemption under § 514 is not sufficient for removal jurisdiction and that a state law claim is only "completely preempted" under Taylor if it can be recharacterized as a claim under § 502(a). For example, in Schmeling v. Nordam, 97 F.3d 1336 (10th Cir. 1996), we stated that the Supreme Court in Taylor found that "the plaintiff's state claims were preempted by ERISA but noted that under the well-pleaded complaint rule, federal preemption is a defense and generally does not authorize removal." Id. at 1340. However, we continued, the Taylor Court "reluctantly extended the principle to allow the removal of state actions within the scope of section 502(a) of ERISA. It was stressed that ERISA preemption alone was insufficient to recharacterize the plaintiff's claim as federal." Id.

We then provided the following explanation of the Tenth Circuit's view of complete preemption under Taylor and other Supreme Court precedent:

> We read the term not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal. . . . This usage reveals that "complete preemption" refers to the replacement of a state cause of action with a federal one.

Id. at 1342. We cautioned that we were not insinuating that "a federal cause of action must provide the same remedies as offered by the preempted state cause of action." Id. at 1343. However, because the FAA drug testing laws did not give any cause of action to the plaintiff in Schmeling (who was challenging an FAA certified air repair station's drug testing policies under state law), we held that the plaintiff's state court action was not removable to the federal courts under the complete preemption doctrine. Id. at 1337, 1344.

Similarly, in Carland v. Metropolitan Life Insurance Co., 935 F.2d 1114 (10th Cir. 1991), we explained the difference between ERISA preemption and removal jurisdiction and held that "a state law claim will convert to a federal claim [and will thus be removable] only if the claim is preempted by ERISA [under § 514] *and* within the scope of ERISA's civil enforcement provisions [§ 502(a)]." Id. at 1118-19 (emphasis added); cf. Meyer v. Conlon, 162 F.3d 1264, 1268 n.2 (10th Cir. 1998) (explaining in a non-ERISA context that the parties confused "complete preemption" with "ordinary preemption," and stating that the two analyses are not "fungible").[8]

---

[8]To the extent that any language in Settles v. Golden Rule Insurance Co., 927 F.2d 505, 508 (10th Cir. 1991), suggests that removal may be grounded in § 514 preemption, we dismiss it as dicta because the plaintiff there had brought her action in diversity and the issue in that case was not complete preemption but only conflict preemption under § 514 as a defense.

We are not alone in distinguishing the concept of § 514 preemption and § 502 "complete preemption." For example, the en banc Sixth Circuit stated that "[r]emoval and preemption are two distinct concepts," and that removal jurisdiction based on § 502 is narrower than preemption defenses based on § 514. Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995) (en banc). The court then overruled its prior precedent for "mistakenly allow[ing] removal in a case not covered by § 1132(a)(1)(B) [§ 502 of ERISA] and only arguably covered by § 1144(a) [§ 514 of ERISA]." Id.

Similarly, the Fifth Circuit explained, "The presence of conflict-preemption [under § 514] does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one – as occurs with complete preemption – conflict preemption serves as a *defense* to state action." Giles v. Nylcare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999) (emphasis in original). The court continued, "When a complaint contains only state causes of action that the defendant argues are merely conflict-preempted [under § 514], the court must remand for want of subject matter jurisdiction." Id.[9]

_____

[9] See also King v. Marriott Int'l, Inc., 337 F.3d 421, 425, 428 n.3 (4th Cir. 2003) (noting that "[i]n cases of complete preemption, however, it is misleading to say that a state claim has been 'preempted' as that word is ordinarily used. . . . [A] vital feature of complete preemption is the existence of a federal cause of action that replaces the preempted cause of action"; holding that a state claim must fit within the scope of § 502; and disregarding § 514 preemption);

(continued...)

- 24 -

To summarize:

> The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir. 1995). This is true

regardless of the strength of the defendant's argument for § 514 preemption.

Taylor, 481 U.S. at 66 ("[E]ven an 'obvious' pre-emption defense does not . . .

create removal jurisdiction.").


**D.** **Are Plaintiffs' state law fraud claims completely preempted so as to provide subject matter jurisdiction for removal?**

---

[9](...continued)
Toumajian v. Frailey, 135 F.3d 648, 654-55 (9th Cir. 1998) (providing a thorough discussion of "conflict preemption" under § 514 and "complete preemption" under § 502, and noting that "[i]f both conditions [§ 514 and § 502] are not met . . . the federal court does not have subject matter jurisdiction and the matter should be remanded"); Rice v. Panchal, 65 F.3d 637, 646 (7th Cir. 1995); Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir. 1995) ("That the Supreme Court has recognized a limited exception to the well-pleaded complaint rule for state law claims which fit within the scope of § 502 by no means implies that all claims preempted by ERISA are subject to removal." ); Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 272 (2d Cir. 1994).

The district court in the instant case found that Plaintiffs' state law claims were "related to" an ERISA plan and were thus preempted under the broad language in § 514. This finding may be correct. See, e.g., Lee v. E.I. DuPont de Nemours & Co., 894 F.2d 755, 755-56, 758 (5th Cir. 1990) (finding § 514 preemption in similar case). However, as discussed above, § 514 preemption is merely a federal defense that cannot provide the basis for removal jurisdiction. We thus turn to the separate question of whether Plaintiffs' claims fell within the scope of § 502(a) and were thus completely preempted. We ultimately conclude in this section that Plaintiffs could not have brought these fraud claims under § 502(a) because their suit is not one to recover benefits due to them under the terms of their employee benefit plan. Accordingly, we reverse the district court's finding of complete preemption.

### 1. Standing to Sue under ERISA

A plaintiff must have standing to sue under § 502(a) before his or her state law claim can be recharacterized as arising under federal law subject to federal jurisdiction under the doctrine of complete preemption. See Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1240-41 (11th Cir. 2001); Lehmann v. Brown, 230 F.3d 916, 919 (7th Cir. 2000); Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 934 (9th Cir. 1994). Section 502(a)(1) of ERISA provides

a cause of action to any "participant or beneficiary[10] . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1) (2000). Congress defined "participant" to mean:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court clarified that under the statute, a former employee with no reasonable expectation of returning to covered employment must have a "colorable claim to vested benefits" under the plan. Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1533 (10th Cir. 1993) (citing Firestone, 489 U.S. at 117-18) (quotations omitted).

Here, Plaintiffs do not seek "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C.

---

[10]ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). There is no contention in this case that Plaintiffs are beneficiaries of a plan due to being so named by some other participants. Accordingly, we focus our discussion on Plaintiffs' status as participants, not as beneficiaries.

§ 1132(a)(1). Neither Plaintiffs nor Defendants contend that Plaintiffs are entitled to the additional benefits under the plan. See Pl. Reply Br. 7 (plaintiffs do not seek pension benefits or claim that the payments they received were less than to which they were entitled); Def. Br. 13 ("It is undisputed that plaintiffs were not eligible for the $15,000.00 'special one-time pension benefit' because they were no longer Lucent employees in September 2001 . . . ."). Rather, Plaintiffs claim that they were fraudulently induced to take early retirement, to their financial detriment; they seek monetary damages from their employer (not from the pension plan) for that alleged fraud. That is not a claim "to recover benefits due to [them] under the terms of [their] plan," and therefore falls outside the scope of 29 U.S.C. § 1132(a)(1).

### 2. The "But For" Exception

Defendants contend, however, that Plaintiffs' claim is completely preempted because it is, in substance, a claim that "but for" Defendants' wrongful actions, they would have been entitled to the additional benefits under the plan. The circuits are split over whether plaintiffs have standing to sue under ERISA in such a case. Although the First, Second, Fifth, Sixth, and Eighth Circuits have held that former employees may sue under ERISA if they make a "but for" claim

of this sort,[11] we, along with the Fourth and Eleventh Circuits, have rejected this approach.  See Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1535 (10th Cir. 1993); Sanson v. Gen. Motors Corp., 966 F.2d 618, 619 (11th Cir. 1992); Mitchell v. Mobil Oil Corp., 896 F.2d 463, 466 (10th Cir. 1990); Stanton v. Gulf Oil Corp., 792 F.2d 432, 433 (4th Cir. 1986).

In Mitchell , a former employee claimed that an allegedly unlawful change in the terms of a retirement benefit plan had the effect of denying him "additional benefits which he would have received" but for the employer's actions.  896 F.2d at 474.  According to the court, the plaintiff was "seek[ing] a damage award, not vested benefits improperly withheld."    Id.  This court thus held that he did not have standing to bring suit for the additional benefits under ERISA.        Id.[12]

---

[11]See, e.g., Adamson v. Armco, Inc., 44 F.3d 650, 654-55 (8th Cir. 1995); Swinney v. Gen. Motors Corp., 46 F.3d 512, 518-19 (6th Cir. 1995); Mullins v. Pfizer, Inc., 23 F.3d 663, 667-68 (2d Cir. 1994); Vartanian v. Monsanto Co., 14 F.3d 697, 702-03 (1st Cir. 1994); Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1220-21 (5th Cir. 1992).  These cases, however, are not all uniform in their application of a "but for" test; rather, they express disparate iterations and applications of that test.

[12]In Mitchell, the plaintiff had received his pension benefits in the form of a lump sum payment upon retirement, and thus was no longer a "participant" in the plan at the time of the lawsuit.  896 F.2d at 474.  The significance of the case, for present purposes, however, lies in the Court's holding that his claim for damages on the basis of the employer's allegedly wrongful conduct, which had the effect of denying him additional pension benefits, did not fall within the scope of the right to sue under ERISA.

In Raymond , we relied on  Mitchell  to hold that former employees who had received the full extent of their vested benefits did not have the right to sue under ERISA for additional benefits that they might have received but for the wrongful conduct of their employers.  983 F.2d at 1535 (citing  Mitchell , 896 F.2d at 474). This is because where a former employee has received all benefits entitled to him under his plan at the time of retirement, he has no "colorable claim" that additional benefits have "vested" or "will vest."  Id. (quotations omitted).  The plaintiffs were not eligible or likely to become eligible to receive the additional benefit at the time they filed the suit.  Id.  "They therefore seek 'a damage award, not vested benefits improperly withheld.'"  Id. (quoting  Mitchell , 896 F.2d at 474).

We pointed out that "the receipt of the 'full extent' of [plaintiffs'] vested benefits" was a "crucial" fact, because that meant that the plaintiffs "seek a damage award based upon their allegedly fraudulent discharge from their jobs; they do not seek 'vested benefits improperly withheld.'"  Id. at 1536.  We then explicitly rejected a "but for" test for ERISA standing. [13]  We stated, "To say that

_____

[13]Although the Raymond court did not cite Mitchell as rejecting the "but for" test, the Mitchell court had indeed rejected a similar argument "that Mobil's violation of ERISA entitled [the plaintiff] to additional benefits which he would have received had Mobil's amendments to the Plan not compelled him to retire at fifty-six, rather than sixty."  Mitchell, 896 F.2d at 474.  We held, "Since these benefits had not yet vested, Mr. Mitchell could not have a colorable claim to

(continued...)

but for Mobil's conduct, plaintiffs would have standing is to admit that they lack standing and to allow those who merely *claim* to be participants to be deemed as such." Raymond, 983 F.2d at 1536. Because there is no controlling case law or statutory language to support such a "but for" exception to find ERISA standing where the plaintiff is not technically entitled to the additional benefit under the pension plan, we declined to create an exception to Firestone and rejected the availability of any "but for" test. Id.[14]

Our holding in Raymond was consistent with our prior opinion in Boren v. Southwestern Bell Telephone Co., Inc., 933 F.2d 891 (10th Cir. 1991), where we had held that a plaintiff did not have ERISA standing because he did not claim to seek "vested benefits improperly withheld." Id. at 893-94 (quotations omitted). Specifically, we stated that Mr. Boren "had no vested benefits because he was not enrolled in the Plan," and we rejected his claims that the defendant "should have

_____

[13](...continued)
vested benefits. . . ." Id.

[14] The "but for" circuits mistakenly assume that our jurisdiction depends only on the traditional notion of "standing." In § 502(a)(1)(B) ERISA cases, we only have *jurisdiction* over suits brought "to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). As the Supreme Court has explained, "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties" outlined in § 502. Franchise Tax Bd., 463 U.S. at 21. Therefore, the requirement of § 502 is "both a standing and a subject matter jurisdictional requirement." Stanton, 792 F.2d at 434; see also Miller v. Rite Aid Corp., 334 F.3d 335, 340 (3d. Cir. 2003) (same).

enrolled him in the Plan." Id. "This sort of claim is not within the jurisdictional grant of ERISA." Id.

Just a couple of months after we decided Raymond, we applied its holding to deny an ERISA plaintiff standing in Alexander v. Anheuser-Busch Cos., Inc., 990 F.2d 536, 538-39 (10th Cir. 1993). Because Alexander was a "former employee" and lacked any reasonable expectation of returning to his employment, we stated that Alexander would have standing, "if at all, only if he has a colorable claim that he will prevail in a suit for benefits." Id. at 539. We found that Alexander did not have such a "colorable" claim for benefits under his plan because his preexisting medical condition was clearly excluded by the plain language of his policy terms. Id. Any damages that Alexander had requested for the defendant's misrepresentations regarding plan coverage were merely claims for "a damage award, not vested benefits improperly withheld." Id. (quotations omitted).

In sum, we have rejected a "but for" test for determining standing to sue under ERISA. We have found a lack of a "colorable claim to vested benefits" where the plaintiffs have already received full payment of all benefits entitled to them under their plan as it existed at the time of their retirement, see Raymond, 983 F.2d at 1536, where the plaintiff was not enrolled in the pension plan at issue, see Boren, 933 F.2d at 893-94, and where the plaintiff's medical condition was

- 32 -

excluded by the terms of the ERISA health plan (notwithstanding defendant's misrepresentations to the contrary).    See Alexander , 990 F.2d at 538-39.

The Eleventh Circuit likewise rejects a "but for" definition for standing to sue in an ERISA action.  In    Sanson , the plaintiff alleged that General Motors had fraudulently represented to him that benefits under a special retirement program would not be offered to his class of employees in the future.   966 F.2d at 619. The plaintiff then retired under the standard provisions of GM's early retirement program in reliance upon those misrepresentations.     Id.  After the plaintiff's retirement, GM contradicted itself and offered the special, better early retirement program anyway.   Id.  The plaintiff sued for the enhanced retirement benefits offered after his retirement, stating that but for the misrepresentations, he would not have retired.   Id.  The Eleventh Circuit held that the plaintiff lacked standing to sue under ERISA because his "common law fraud claim" did not exist under ERISA and the court refused to create a federal common law claim.      Id. at 621-22.

In Stanton , the Fourth Circuit reached the same result.  There, the plaintiff had asked his employer whether it was planning to adopt a better early retirement program in the near future, and in reliance on the employer's statements that it was not, the plaintiff retired.  792 F.2d at 433.  However, after the plaintiff's retirement under the earlier plan, the employer adopted a better plan.      Id.  The

plaintiff sued for breach of fiduciary duty under ERISA based on the employer's alleged misrepresentations, and argued that he had standing to sue because "he 'may [have] become eligible to receive a benefit' *but for* his leaving Gulf Oil's employ by electing early retirement." Id. at 434 (alteration in original). The Fourth Circuit rejected the plaintiff's argument, stating that "[t]he effect of reading in a 'but for' test is to impose participant status on every single employee who *but for* some future contingency may become eligible. Neither caselaw nor other provision of ERISA supports such a reading of 'participant.'" Id. at 435.

### 3. Do Plaintiffs Have ERISA Standing in the Instant Case?

In the instant case, because no party disputes that Plaintiffs are "former employees," we may only find they have standing to sue under ERISA if they have either a "reasonable expectation of returning to covered employment" or "a colorable claim for vested benefits." Firestone, 489 U.S. at 117-18; Alexander, 990 F.2d at 539. Plaintiffs do not assert any statutory or contractual right to reinstatement, nor do they even request reinstatement. Thus, they do not have a "reasonable expectation" of returning to such employment. See Alexander, 990 F.2d at 539.

Nor have Plaintiffs asserted a "colorable claim to vested benefits," as they do not claim that they are entitled to benefits under the terms of their plan as it

existed at the time of their retirement. Rather, they claim that they should receive damages for the loss of the additional benefits under the later package (e.g., the $15,000 lump sum and the year of service) because they *would have been* participants under that package but for Defendant's misrepresentations. This echoes the plaintiff's argument that we rejected in <u>Mitchell</u>:

> [Mr. Mitchell] did not claim that Mobil had improperly withheld vested benefits. . . . Instead, he claimed that Mobil's violation of ERISA entitled him to additional benefits which he would have received had Mobil's amendments to the Plan not compelled him to retire at fifty-six, rather than sixty. Since these benefits had not yet vested, Mr. Mitchell could not have a colorable claim to vested benefits, but *only a claim for compensatory damages.*

896 F.2d at 474 (emphasis added).

The terms of the later October package explicitly excluded Plaintiffs, and they do not argue that they have a colorable claim for those benefits. <u>Cf.</u> <u>Alexander</u>, 990 F.2d at 539. Plaintiffs are simply not claiming that, at the time of their suit, they were eligible or likely to become eligible for the additional benefits *under the terms of any welfare or pension plan.* <u>See</u> 29 U.S.C. § 1132(a) (ERISA § 502(a)); 29 U.S.C. § 1002(1)-(3). The nature of their claim is not that Defendants improperly withheld vested benefits owed to them, but rather that they should receive damages for the fraud they suffered. As the Eleventh Circuit has held, ERISA provides no cause of action to non-participants who claim they were defrauded out of pension benefits in violation of common law fraud principles.

See Sanson , 966 F.2d at 621.   Because Plaintiffs are not entitled to the additional benefits at issue "under the terms of [their] plain," their state law claims do not fall within the scope of ERISA § 502(a)(1), and our subject matter jurisdiction cannot be based upon the doctrine of complete preemption.

It is true that our opinion leaves open the uncomfortable possibility that Plaintiffs may lack standing to sue under ERISA, but will then be preempted in state court under § 514 from asserting a state claim, leaving them with no remedy. Although this is a valid concern, we have not found it to be a concern of the federal judiciary.  "[W]e have noted the unavailability of a remedy under ERISA is not germane to preemption analysis."   Cannon v. Group Health Serv. of Okla., Inc. , 77 F.3d 1270, 1274 (10th Cir. 1996).  As we explained in    Raymond , "[T]he fact that a state law claim may be preempted does not necessarily mandate that there be an ERISA remedy."  983 F.2d at 1538;    see also  Corcoran v. United Healthcare, Inc.  , 965 F.2d 1321, 1333 (5th Cir. 1992) ("While we are not unmindful of the fact that our interpretation of the pre-emption clause leaves a gap in remedies within a statute intended to protect participants in employee benefits plans, the lack of an ERISA remedy does not affect a preemption analysis.") (citations omitted).  Congress intended the civil enforcement mechanisms of ERISA to be exclusive, and the "policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme

would be completely undermined if ERISA-plan participants . . . were free to obtain remedies under state law that Congress rejected in ERISA." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); see also Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1250 (10th Cir. 2004).

We also point out that the policy gap here is smaller than it may first appear, as it is possible that some plaintiffs may be able to bring claims under other subsections of § 502 that are not at issue in the instant case.[15] For example, there may be the possibility of claims, under proper factual circumstances, under § 510 of ERISA, see Garratt v. Walker, 164 F.3d 1249, 1255-56 (10th Cir. 1998) (en banc), or breach of fiduciary duty claims brought on behalf of the plan under § 502(a)(2), see Walter v. Int'l Assn. of Machinists Pension Fund, 949 F.2d 310, 316-17 (10th Cir. 1991), or claims for equitable relief brought under the catch-all provision of § 502(a)(3), see Varity Corp. v. Howe, 516 U.S. 489, 507-15 (1996).[16]

_____

[15]We mention the following only as possibilities, without addressing, of course, the elements of such causes of action because these issues are not before us.

[16]No party in the instant case argues that Plaintiffs' fraud claims should be characterized as breach of fiduciary duty claims, nor are Plaintiffs' allegations in their complaint properly so construed. A claim for fraud requires different elements than does a claim for breach of fiduciary duty, and in any event, Plaintiffs do not request equitable relief as required by a § 502(a)(3) claim. See Millsap, 368 F.3d at 1260. We note that at least one court has held that § 502(a)(3) is not available under Varity where § 502(a)(1) provides an available

(continued...)

In conclusion, we refuse to second-guess Congress' policy choices in ERISA, and we hold that Plaintiffs are not "participants" so as to bring their fraud claims within the reach of § 502(a)(1). We thus hold that the district court erred in finding complete preemption. Upon remand, the state court will be free to consider dismissal under § 514's conflict preemption provision, but that issue is not properly before us.

## II. Were Plaintiffs' fraud claims properly removed on the basis of "complete preemption" under the LMRA?

Defendant also argues that Plaintiffs' state law claims of fraud are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a).[17] ERISA is not the only statute that has been found by the Supreme Court to have "complete preemption" effect. As discussed earlier, § 301 of the LMRA was the first statute to have been so analyzed by the Court. See Avco, 390 U.S. at 561; Taylor, 481 U.S. at 63-64.

---

[16](...continued)
remedy, even if the particular plaintiffs end up lacking standing as "participants" under § 502(a)(1). See Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc., 102 F.3d 712, 716 (4th Cir. 1996).

[17]Although Defendant raised this alternative argument below, the district court declined to rule on it and relied solely on ERISA preemption. We address this argument because we may affirm on any basis supported by the record. See United States v. Welch, 327 F.3d 1081, 1089 (10th Cir. 2003).

Section 301 of the LMRA[18] "governs claims founded directly on rights created by collective-bargaining agreements [CBAs], and also claims substantially dependent on analysis of a collective-bargaining agreement," see Caterpillar, 482 U.S. at 394 (quotations omitted), although it does not contain an explicit preemption provision. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985).

We have explained that § 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1302 (10th Cir. 2000) (alteration in original; quotations omitted). The Supreme Court found no complete preemption under § 301 where the plaintiff's complaint was "not substantially dependent upon interpretation of the [CBA]. . . . [and did] not rely upon the [CBA] indirectly." Caterpillar, 482 U.S. at 395; see also Allis-Chalmers, 471 U.S. at 213 (stating that § 301 preemption analysis turns on whether the tort action confers rights on employers or employees "independent of any right established by

_____

[18]Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a) (2000).

contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract").

The Supreme Court has outlined a key distinction between a claim that involves interpretation of CBA terms and one that involves mere reference to those terms, with only the former requiring complete preemption under § 301 of the LMRA. When the parties do not dispute the meaning of the contract terms, "the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). "[T]he mere need to 'look to' the [CBA] for damages computation is no reason to hold the state-law claim defeated by § 301." Id. at 125; see also Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997) (emphasizing difference between interpretation of CBA and mere consultation of CBA).

Defendant in the instant case argues that Plaintiffs' fraud claims are simply an attempt to vindicate their rights under the February 19 Memorandum of Agreement ("MOA") (modifying existing CBA), which set forth their early retirement benefits package. However, Plaintiffs do not assert any violation of contractual rights under any labor agreement, but rather sue to vindicate their right not to be defrauded. They are thus asserting rights independent of the contract and are not preempted by § 301.

Plaintiffs' claims are very similar to those asserted by the plaintiff in Wynn v. AC Rochester, 273 F.3d 153 (2d Cir. 2001) (per curiam). In Wynn, the plaintiff was not completely preempted by § 301 of the LMRA because "[h]is claim [was] not that GM did not provide what the CBA required, but that GM officials misled him into selecting one option by misrepresenting the availability of the other." Id. at 159. Another analogous case was also decided by the Second Circuit in Foy, where the plaintiffs alleged that their employer made false promises regarding transfer opportunities prior to lay-offs, and the court found no removal jurisdiction under § 301 of the LMRA. 127 F.3d at 234-35. "State law – not the CBA – is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation." Id. at 235. Similarly, Plaintiffs in the instant case are asserting rights independent of their labor agreements with Defendant.

Defendant also argues that Plaintiffs' fraud claims will require us to interpret the CBA (through the February 19 MOA, which modified the CBA). Defendant correctly points out that Oklahoma law requires as an element of fraud "reasonable reliance" on misrepresentations, and that "an action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." Silver v. Slusher, 770 P.2d 878, 882 n.8 (Okla. 1989). Defendant insists that because Plaintiffs allege

misrepresentations regarding the MOA and CBA, we will have to interpret those contracts in order to ascertain whether Defendant's representations were actually false.

However, Defendant misunderstands the nature of Plaintiffs' claims. Plaintiffs do not allege that Defendant made any misrepresentations about the terms or application of the MOA or CBA. Rather, they allege that Defendant lied in informing them regarding the *choice* between retiring under the June plan or waiting until later. Therefore, there is simply no need to interpret the MOA or CBA in order to ascertain whether Defendant's representations were false, and the actual meaning of the CBA and MOA is not in dispute.[19] Just as in Foy, Plaintiffs' state law misrepresentation claims "depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it. Reference to the CBA may be needed, but state law will play no part in determining what the parties agreed to in the CBA . . . ." 127 F.3d at 235 (citation omitted).

_____

[19]At oral argument, Defendant's counsel raised the hypothetical possibility of the CBA containing language allowing future better packages, which would cut against any reasonable reliance by Plaintiffs on Defendant's misrepresentations to the contrary. However, because no party argues that such language exists in this case, we refuse to find complete preemption on the basis of hypothetical CBA language.

The parties agree that the later October package provides for an additional $15,000 and benefits for an additional year of service. Especially when the terms are undisputed, the court's limited reference to the CBA to confirm damages is not sufficient to remove a state law claim on the ground that it is completely preempted by § 301 of the LMRA. See Livadas, 512 U.S. at 125.

We conclude that Plaintiffs' state law claims are not completely preempted by the LMRA.[20]

### III. Were Plaintiffs' fraud claims properly removed on the basis of "complete preemption" under the NLRA?

Finally, Defendant argues for the first time on appeal that the district court had removal jurisdiction based on "Garmon preemption" under §§ 7-8 of the National Labor Relations Act ("NLRA"), since Plaintiffs' allegations arguably constitute unfair labor practices prohibited or protected by those sections of the NLRA. Although Defendant did not present this argument to the district court, we may affirm on any basis supported by the record. See Welch, 327 F.3d at

---

[20]Defendant also raises the issue of another potential claim by Plaintiffs against their union (IBEW) for breach of the duty of fair representation, and argues that this would also be completely preempted by the LMRA. As Plaintiffs point out, they have not made such a claim, and the union is not a defendant in this case. Accordingly, we ignore this hypothetical cause of action.

- 43 -

1089. We ultimately disagree with Defendant because <u>Garmon</u> preemption does not provide a basis for removal jurisdiction.

In <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236 (1959), the Supreme Court divested the states of the power to make laws over activities that are arguably protected or prohibited by the NLRA. <u>Id.</u> at 244. "<u>Garmon</u> preemption" applies when the "controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the Labor Board." <u>Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters</u>, 436 U.S. 180, 197 (1978). In <u>International Longshoremen's Association v. Davis</u>, 476 U.S. 380 (1986), the Court held that "*Garmon* pre-emption is a nonwaivable foreclosure of the state court's very jurisdiction to adjudicate." <u>Id.</u> at 389, 398-99. It is a reflection of Congress's decision to vest "exclusive jurisdiction" in the NLRB. *Id.* at 391. If <u>Garmon</u> preemption applies, the correct result is that neither the federal court nor the state court has jurisdiction; the case must be adjudicated before the NLRB. <u>See Baker v. IBP, Inc.</u>, 357 F.3d 685, 688 (7th Cir. 2004) ("Applied to claims in federal court, and arising under federal law, *Garmon* has nothing to do with either preemption or subject-matter jurisdiction. It is a rule of primary jurisdiction, allocating to an administrative agency the first crack at certain matters."). Accordingly, <u>Garmon</u> preemption provides no basis for

removal jurisdiction in federal court. A case falling within the scope of the doctrine must be adjudicated before the NLRB.

The lower courts are uniform in finding that <u>Garmon</u> preemption under the NLRA does not completely preempt state laws so as to provide removal jurisdiction. <u>See, e.g.</u>, <u>Ethridge v. Harbor House Rest.</u>, 861 F.2d 1389, 1399-1400 (9th Cir. 1988) (holding that <u>Garmon</u> preemption does not constitute "complete preemption" for removal purposes because §§ 7 and 8 of the NLRA do not create jurisdiction in the federal district courts; instead, those provisions vest jurisdiction in the NLRB to determine unfair labor practices and state courts are as able to determine if jurisdiction belongs in the NLRB as are the federal district courts); <u>Suarez v. Gallo Wine Distribs. LLC</u>, No. 02 Civ. 4273 LTSTHK, 2003 WL 716548, at * 2 (S.D.N.Y. Mar. 3, 2003) ("Lower courts that have considered this question have uniformly held that an assertion of *Garmon* preemption is insufficient to provide a basis for removal.") (citing <u>TKO Fleet Enters. v. Dist. 15</u>, 72 F. Supp. 2d 83, 87 (E.D.N.Y. 1999) (collecting cases)); <u>Sandoval v. N.M. Tech. Group LLC</u>, 174 F. Supp. 2d 1224, 1234 (D. N.M. 2001); <u>Gul v. Pamrapo Sav. Bank</u>, 64 F. Supp. 2d 370, 373 (D. N.J. 1999); <u>Baldwin v. Pirelli Armstrong Tire Corp.</u>, 927 F. Supp. 1046, 1052 (M.D. Tenn. 1996). <u>But see</u> <u>Baker</u>, 357 F.3d at 688 (providing dicta suggesting to the contrary).

The rejection of Garmon preemption as a basis for removal is consistent with the Supreme Court's dicta in Caterpillar, which stated, "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA [pursuant to Garmon] does not establish that they are removable to federal court." Caterpillar, 482 U.S. at 398. "[R]espondents' state-law claims might be pre-empted by the NLRA, but they would not be transformed into claims arising under federal law." Id. at 398 n. 12.

Additionally, we have stated, "In cases in which preemption under the NLRA does not automatically deprive both state and federal courts of jurisdiction in favor of the jurisdiction of the NLRB [under Garmon], such [NLRA conflict] preemption is simply a defense to state law claims touching on areas covered by the federal enactment." United Ass'n. of Journeymen and Apprentices of the Plumbing & Pipe Fitting Indus., Local No. 57 v. Bechtel Power Corp., 834 F.2d 884, 887 (10th Cir. 1988). We continued by explaining that this defense provides "no basis for removal of the instant case to the federal court," and that the defendant's claims of preemption under NLRA §§ 7-8 "[were] matters to be addressed in the first instance by the Utah state courts." Id. at 887, 890.

Defendant provides no argument as to why we should find that NLRA preemption permits removal to federal court. It will be up to the state court to analyze whether Garmon preemption applies.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND with instructions to remand this case to the state court.