FILED
United States Court of Appeals
Tenth Circuit

March 9, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DENNIS CHASTAIN; ARTHUR
SCHRICKER; LARRY PATTERSON;
R. C. WALKER, individually and on
behalf of all others similarly situated,

        Plaintiffs - Appellants,

    v.

AT&T,

        Defendant - Appellee.

No. 07-6288

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D. Ct. No. 5:04-CV-00281-F)**

---

Edward L. White, Edward L. White, P.C., Oklahoma City, Oklahoma, appearing
for Appellants.

John Houston Pope, Epstein Becker & Green, P.C., New York, New York,
appearing for Appellee.

---

Before **TACHA**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

      The plaintiffs-appellants are four members of a prospective class who

retired as employees of AT&T Corporation ("AT&T") and who received post-

retirement benefits pursuant to the AT&T Management Pension Plan. After they retired, AT&T spun off a new corporate entity, Lucent Technologies Inc. ("Lucent"), and transferred the appellants to a Lucent-sponsored retirement benefits plan. Thereafter, Lucent eliminated certain benefits, and the appellants brought this action against AT&T. The district court granted summary judgment to AT&T, holding that the appellants did not have standing under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, to sue AT&T because they were no longer participants in an AT&T benefits plan. In the alternative, the district court concluded that the claims failed on the merits. We have jurisdiction under 28 U.S.C. § 1291, and because the district court correctly determined that the appellants lack standing, we AFFIRM.

## I. BACKGROUND

The appellants initially were employed by Western Electric Company, an AT&T subsidiary, beginning in the 1940s and 1950s. Each of them participated in the Western Electric Pension Plan. In December 1975, Arthur Schricker retired with that plan in effect. He continued to receive retirement benefits as the plan's denomination changed, first to the Bell System Management Pension Plan, and then to the AT&T Management Pension Plan ("AT&T Plan"). The other three appellants—Dennis Chastain, Larry Patterson, and R.C. Walker—retired in December 1989 under the AT&T Plan.

In 1996, AT&T spun off Lucent as a separate corporation. AT&T and its

spinoff then entered into an Employee Benefits Agreement, under which AT&T transferred certain participants in the AT&T Plan, including the appellants, to the Lucent Retirement Income Plan ("Lucent Plan"). The appellants were aware of the transfer. For several years, the appellants received the same benefits from the Lucent Plan as they had received under the AT&T Plan. In 2003, however, Lucent eliminated the three benefits that are the subject of this action. The first eliminated benefit was the Pensioner Death Benefit, through which the survivors of a deceased retiree could receive a benefit equal to one year of the retiree's pay. The second eliminated benefit reimbursed retirees and their spouses for premiums paid under Medicare Part B. The third eliminated benefit was company-paid dental coverage; it was replaced by an option to purchase coverage at group rates.

In March 2004, the appellants filed this putative class action in federal district court, asserting claims for breach of express agreement, breach of the implied covenants of good faith and fair dealing, breach of fiduciary duty, and conversion. Federal jurisdiction was invoked "pursuant to Article III, Section 2, Clause 1 of the United States Constitution, as annotated, Title 29, Ch. 18, United States Code and [28] U.S.C. §§ 1331 & 1367." AT&T moved for judgment on the pleadings, contending that the claims were either preempted by ERISA or barred by the statute of limitations. In its ruling on the motion, the district court highlighted the "imprecise nature" of the complaint, noting that it did not indicate whether any particular claim was based in federal or state law but adding that the

reference to "Title 29, Ch. 18" was a citation to ERISA.[1]  *Chastain v. AT&T*, No. CIV-04-281-L (W.D. Okla. March 31, 2005) (order denying judgment on the pleadings).  Accordingly, the district court explained that this "lack of specificity in the Complaint has required the defendant to construe the complaint as alleging ERISA claims."  *Id.*  The court ultimately denied the motion but accepted the appellants' invitation to dismiss their claims for breach of the implied covenants of good faith and fair dealing.  *Id.*

In December 2006, the appellants sought class certification, specifically arguing in their motion that "[t]he claims arise under . . . the same federal law (29 U.S.C. § 1101, et seq.)" and setting forth the legal framework under ERISA. During the class certification hearing, the appellants' attorney reiterated that "[t]he basis of our claim is that they made a stand-alone plan with uniform enforceable promises of benefits for certain periods. . . .  [T]hose benefits are based on [ERISA §] 502(a)(1)(B),[2] not on some sort of reliance argument."

AT&T moved for summary judgment.  It posited that the "[p]laintiffs clearly and unequivocally frame and confine their claims as ones proceeding under [ERISA] Section 502(1)(1)(B)," and they cannot file suit against AT&T

---

[1]The other three bases for federal jurisdiction—Article III, section 2, clause 1; 28 U.S.C. § 1331; and 28 U.S.C. § 1367—refer to the judiciary's constitutional power to hear all cases arising under the Constitution and federal law or between citizens of different states, and the statutory grants of federal question and supplemental jurisdiction.

[2]29 U.S.C. § 1132(a)(1)(B).

because they are not participants in any AT&T-sponsored ERISA plan. *See* 29 U.S.C. § 1132(a)(1) (limiting suits to recover benefits to a "participant" in or "beneficiary" of an ERISA plan). AT&T also argued that even if the appellants were participants, their claims would fail on the merits. The appellants did not dispute AT&T's characterization of their claims. To the contrary, in their summary judgment briefs the appellants repeatedly designated their claims as claims for recovery of plan benefits under ERISA § 502(a)(1)(B). They never described the claims in terms of misrepresentation, reliance, or breach of fiduciary duty. Thus, in its summary judgment order, the district court recognized that the "plaintiffs have considerably narrowed and refined their claims since the filing of the . . . complaint." *Chastain v. AT&T*, No. CIV-04-0281-F, 2007 WL 3357516, at *1 (W.D. Okla. Nov. 8, 2007). Specifically, the court found "that all claims other than plaintiffs' § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)] claims to recover plan benefits have been abandoned, or confessed for lack of developed argument, and such claims are dismissed on that basis." *Id.* Thus, the court explained that "this action now stands as one seeking to recover plan benefits due under ERISA, 29 U.S.C. § 1132(a)(1)(B) [§ 502(a)(1)(B)]." *Id.* at *2. The court went on to grant summary judgment to AT&T based on lack of ERISA standing, or, in the alternative, because the appellants' claims would fail on the merits. *Id.* at *9, *15. Having determined that the appellants could not prevail, the district court dismissed their motion to certify the class as moot. *Id.* at *15. The

appellants now appeal the district court's entry of summary judgment against them.

## II.  DISCUSSION

As an initial matter, we clarify that the appellants pursue claims only under ERISA.  Although their complaint could be construed as asserting state claims, the district court explained that the appellants have since "refined" their theories of liability and limited themselves to claims under ERISA, and on appeal the appellants do not contest that determination.[3]  Thus, our analysis is likewise

---

[3]The appellants stated at oral argument that they have preserved a breach-of-contract claim, but they asserted no such claim in their opening brief, and therefore they waived any such claim.  *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007).  The appellants did state in their brief that the district court "should have looked to the elements of contract law in analyzing AT&T's role as an obligor . . . ."  However, that statement was part of an argument to collect benefits under ERISA § 502(a)(1)(B), rather than a separate claim for breach of contract.

The appellants cited to our holding in *Deboard v. Sunshine Mining & Ref. Co.*, 208 F.3d 1228 (10th Cir. 2000), for the proposition that the retirement plan offered by AT&T should be treated as a separate ERISA plan from the benefits plans under which the employees previously were covered.  That issue goes to the merits of the appellants' claims under ERISA § 502(a)(1)(B), and we therefore need not address that issue unless we determine that the appellants have standing to sue AT&T.

Our *Deboard* opinion noted that we apply "general principles of contract construction" in determining whether benefits have vested under an ERISA plan. *Id.*  at 1240.  However, *Deboard* simply provided a method for analyzing a claim under ERISA § 502(a)(1)(B).

*Deboard* did not provide a separate action for breach of contract within ERISA, and no such claim exists.  *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004) (rejecting the argument that a claim for breach of contract, in the ERISA context, could be construed as a claim under federal common law).  The appellants also have not

(continued...)

limited to whether summary judgment was warranted on the appellants' claims for relief under ERISA.

A.    Standard of Review

We review de novo a district court's grant of summary judgment, "viewing all facts in the light most favorable to the party opposing summary judgment." *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1306 (10th Cir. 2008).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

B.    Standing Under ERISA § 502(a)(1)(B)

ERISA § 502(a)(1) allows civil suits "by a participant or a beneficiary" of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1).  Thus, only plaintiffs who are properly considered "participants" or "beneficiaries" have standing to sue under ERISA § 502(a)(1).  *See Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1532 (10th Cir. 1993).  We have explained that "§ 502(a) is both a standing and a subject matter jurisdictional requirement."  *Felix v. Lucent Techs.,*

---

³(...continued)
made a claim for breach of contract outside of the ERISA context, so they have not preserved any claim for breach of contract.

*Inc.*, 387 F.3d 1146, 1160 n.14 (10th Cir. 2004).

In this case, the appellants contend they are participants in, not beneficiaries of, an ERISA plan. ERISA defines a "participant" as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The Supreme Court has further clarified the definition of "participant." Under ERISA, participants are "employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (alterations, citations, and quotations omitted). Because the appellants are retired, they are not employees currently in covered employment. Nor do the appellants claim that they expect to return to covered employment. The issue, then, is whether they have a "colorable claim to vested benefits."

We find the answer in *Varity Corp. v. Howe*, 516 U.S. 489 (1996). In *Varity*, the plaintiffs worked for Massey-Ferguson, Inc. and its wholly-owned subsidiary, Varity Corporation (collectively, "Massey-Ferguson"). *Id.* at 492. In an effort to shed benefits costs from money-losing divisions, Massey-Ferguson created a separately incorporated subsidiary called Massey Combines. *Id.* at 493.

With the knowledge that it was putting employees' benefits at risk, Massey-Ferguson persuaded approximately 1,500 employees to accept transfer from the Massey-Ferguson benefit plan into the Massey Combines benefit plan. *Id.* at 493–94. The central issue in the case was whether the transferred employees could sue Massey-Ferguson for breach of fiduciary duty under ERISA § 502(a)(3).[4] *Id.* at 494–95. The Court answered that question in the affirmative, reasoning in part that if it had not allowed such a suit, the plaintiffs would have had "no remedy at all." *Id.* at 515. Specifically, the Court stated, "[t]he plaintiffs in this case could not proceed under the *first* subsection [ERISA § 502(a)(1)] because they were no longer members of the Massey-Ferguson plan and, therefore, had no 'benefits due them under the terms of the plan.'" *Id.* (quoting § 502(a)(1)(B)) (alterations omitted).

*Varity* stands for the proposition that when a business entity creates a spin-off and transfers an employee benefits plan to the spinoff, employees covered under the spinoff's plan cannot file suit against the original business entity under ERISA § 502(a)(1)(B). Those employees are not owed benefits by their original employer, and thus they do not have a "colorable claim to vested benefits" under

_____

[4]That subsection provides for a civil action:
by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]
29 U.S.C. § 1132(a)(3).

the original entity's plan. Therefore, under *Firestone*, the employees are not "participants" in that plan. Accordingly, the appellants here do not have standing to sue AT&T under § 502(a)(1)(B).[5]

The language that is central to our inquiry was dictum in *Varity*, but we follow it for two reasons. First, this court gives significant deference to all statements of the Supreme Court, including dicta. *See Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("[T]his court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings . . . ."). Second, the statement was influential to its holding. The Court stated that allowing suits under § 502(a)(3) for breach of fiduciary duty was appropriate when the plaintiffs would otherwise be without a remedy. *Varity*, 516 U.S. at 515. Thus, the Court's determination that the plaintiffs could not have sued under ERISA § 502(a)(1)—and were therefore without a remedy—was important to the Court's overall analysis.

The district court found it "telling" that the appellants ignored *Varity* in their summary judgment briefing. *Chastain*, 2007 WL 3357516, at *5. We find it equally telling that the appellants essentially have ignored *Varity* in both of their

_____

[5]We recognize that *Varity* was not a decision based on standing. We believe, however, that the Court's language—stating that the plaintiffs were no longer "members" of the plan and had no benefits due to them under the plan—effectively states that the plaintiffs would not have been "participants" in the plan for the purposes of bringing a claim under § 502(a)(1)(B).

-10-

appellate briefs.[6] There is no material distinction between *Varity* and this case on the issue of whether the appellants can sue AT&T under § 502(a)(1)(B), and the appellants' silence implicitly acknowledges that fact. The appellants do offer two separate arguments as to why they have a "colorable claim to vested benefits," but we find both arguments to be unavailing.

First, the appellants claim that the AT&T Plan contains language preventing AT&T from changing the employees' benefits without their consent. This argument, however, goes to the merits and not to the question of whether the appellants have standing to bring this action under § 502(a)(1) against AT&T in the first place. *Varity* counsels us that to maintain a suit under § 502(a)(1)(B), the appellants need more than just a colorable claim to vested benefits against some party; they need a colorable claim to vested benefits against *the party whom they are suing*. As noted above, the appellants were no longer members of AT&T's plan once AT&T transferred all plan obligations to Lucent. Even if AT&T at one time had an irrevocable obligation to the appellants, it passed that obligation to Lucent when it passed the administration of the benefits plans to Lucent. Therefore, if the appellants have any colorable claim to vested benefits,

---

[6]In their opening brief, the appellants discussed the Eighth Circuit's ruling in *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994), the forerunner to the Supreme Court case at issue. But they have mentioned the Supreme Court *Varity* case only in passing and have made no effort to distinguish it from the present case.

it is against Lucent, not against AT&T.[7]

Second, the appellants urge us to adopt the doctrine of "but-for" standing. Several circuits have found standing for plaintiffs who would have been participants in an ERISA plan "but for the alleged malfeasance of a plan fiduciary." *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 129 (3d Cir. 2006). *See also Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518–19 (6th Cir. 1995); *Adamson v. Armco, Inc.*, 44 F.3d 650, 654–55 (8th Cir. 1995); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 667–68 (2d Cir. 1994); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 702 (1st Cir. 1994); *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220–23 (5th Cir. 1992).

This court, however, has expressly rejected the doctrine of "but for" standing. *See Felix*, 387 F.3d at 1160–61; *Raymond*, 983 F.2d at 1536. The appellants attempt to distinguish *Raymond* and *Felix* on the basis that the plaintiffs in those cases sought damages rather than benefits already owed to them. The *Raymond* plaintiffs claimed that Mobil fraudulently induced them to retire by convincing them that early retirement was a prerequisite for obtaining a particular benefits package. *Raymond*, 983 F.2d at 1531–32. Similarly, the *Felix* plaintiffs asserted fraud by Lucent in inducing them to accept an early retirement offer. *Felix*, 387 F.3d at 1150.

---

[7]We take no position on whether the appellants have a colorable claim against Lucent.

While the appellants correctly assert that this case presents different factual circumstances, those circumstances are irrelevant to the analysis. Our prior cases did not reject "but for" ERISA standing within a particular context. Our cases rejected the entire doctrine. For instance, in *Raymond* we criticized the Fifth Circuit's decision in *Christopher* that embraced "but for" standing:

> [T]he *Christopher* court's "but for" standing analysis—"but for the employer's conduct alleged to be in violation of ERISA, the employee *would* be a current employee with a reasonable expectation of receiving benefits"—amounts to the kind of analysis rejected by the Supreme Court in *Firestone*: "[t]o say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous." To say that but for Mobil's conduct, plaintiffs would have standing is to admit that they lack standing and to allow those who merely *claim* to be participants to be deemed as such.

*Raymond*, 983 F.2d at 1536 (citations omitted). In *Felix*, we explained that the "but for" circuits were improperly applying traditional notions of standing, rather than focusing on ERISA's jurisdictional rules. *Felix*, 387 F.3d at 1160 n.14. We added that "[t]he express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties outlined in § 502." *Id.* (quotations omitted).

Our precedent, therefore, is unequivocal. We have rejected the "but for" standing doctrine in its entirety, not in particular contexts. As we are required to do, we now follow that precedent and decline the appellants' invitation to apply the "but for" standing doctrine in this case.

Having determined that the appellants are not participants in AT&T's

ERISA plan, and that we will not engage in the "but for" analysis, we hold that the appellants do not have standing to bring a claim to recover benefits from AT&T under ERISA § 502(a)(1). As a result, we do not have subject-matter jurisdiction to hear the merits of that claim.[8] *See Felix*, 387 F.3d at 1160 n.14.

C.    ERISA § 502(a)(3)

Finally, the appellants argue that they have not waived a future claim for breach of fiduciary duty under ERISA § 502(a)(3). They contend that they "are incapable of waiving claims they did not even possess until the District Court granted summary judgment to AT&T." Our review, however, is limited to those claims that the appellants did, in fact, pursue in this case. We may not issue an advisory opinion as to whether the appellants have waived any future claims relating to their reduction of benefits. We also have no basis to assess a claim that has not been made, and the appellants have not made a claim for recovery based on ERISA § 502(a)(3).

## III. CONCLUSION

Because the appellants are not "participants" in an AT&T benefits plan, they do not have standing to sue AT&T under ERISA § 502(a)(1). We therefore AFFIRM the district court's grant of summary judgment to AT&T.

_____

[8]The appellants argue that the district court ignored certain disputed issues of fact in granting summary judgment. We have reviewed the record and disagree with the appellants' characterization of the district court's order.