**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 13, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEFFREY HANSEN, an individual,

    Plaintiff-Appellant,

v.

HARPER EXCAVATING, INC.,

    Defendant-Appellee.

No. 08-4089

Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:07-CV-00679-BSJ)

April Hollingsworth of the Hollingsworth Law Office, LLC (Leslie G. Schaar of Hoole & King LC, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellant.

Ryan B. Hancey (Scott O. Mercer with him on the brief) of Kesler & Rust, Salt Lake City, Utah, for Defendant-Appellee.

Before **TYMKOVICH, EBEL,** and **GORSUCH,** Circuit Judges.

**EBEL**, Circuit Judge.

This case requires us to address the preemptive scope of the Employee Retirement Income Security Act ("ERISA"), as well as to clarify the relationship between judicial estoppel and subject-matter jurisdiction. Jeffrey Hansen worked for Harper Excavating for six months beginning in 2003. During this time, he attempted to enroll in Harper's ERISA-regulated health insurance plan, but, unbeknownst to him, Harper never effectively enrolled him in the plan, although it did deduct plan "payments" from his paycheck. Shortly after he left the company, Hansen fell ill, and incurred thousands of dollars in medical expenses when he discovered that he did not actually have insurance through Harper.

Hansen sued in federal court under ERISA and won a substantial damages award. During discovery related to that suit, Hansen learned of other alleged behavior on the part of Harper that led him to file a lawsuit based entirely on state law against his former employer in state court in Utah. Harper removed that case to federal court. The district court denied remand, then dismissed the case. Exercising jurisdiction under 28 U.S.C. § 1291, we REVERSE and REMAND with instructions to remand the case to state court.

# BACKGROUND[1]

Jeffrey Hansen was hired by Harper Excavating in November 2003. When he was hired, he was told by Harper that employees were eligible to enroll in its health insurance plan after 90 days on the job. He completed the enrollment forms, which he assumed would be submitted once he had worked the requisite 90 days. In February 2004, Hansen learned that premiums were not being deducted from his pay. Harper's benefits coordinator, Stacy Henderson, told Hansen that his original paperwork had been lost, and had him fill out a new set of enrollment forms, which she sent to Regence BlueCross BlueShield of Utah ("BCBS"), Harper's insurance provider. Henderson also provided Hansen with the policy and group numbers of Harper's insurance policy in the event Hansen needed to use the insurance before his own enrollment card arrived. Harper began regularly deducting premium payments from Hansen's check, for coverage retroactive to February 1, 2004 (i.e. 90 days after he began working for the company). On April 28, 2004, Hansen left his employment with Harper.

In May 2004, Hansen went to the hospital with breathing problems. When he presented the group and policy numbers given to him by Henderson, he was informed that he had no coverage under Harper's plan. As was later revealed in discovery, Harper's contract with BCBS required employees to apply for coverage between 60 and

---

[1] The facts recited in this opinion are taken from the pleadings. Because there has not yet been a trial or other fact finding in this case, the recitation of facts herein are not, of course, factual findings.

90 days after starting employment, rather than after 90 days, as Hansen had been told. His initial paperwork had never been submitted, and when Henderson submitted his second round of paperwork in March 2004, it was rejected by BCBS as untimely (which is to say, after the 60-90 day window had closed). Harper was notified of this rejection, and yet never informed Hansen that he was not covered and, moreover, continued to deduct "premium payments" from his paycheck for the remainder of his tenure with the company. In June 2004, Harper sent Hansen a check for $279.91 in refunded payments, as well as a copy of the notification of rejection for Hansen it had received from BCBS in March 2004.

Because he was unable to obtain medical care, Hansen's condition worsened; he currently suffers from spinal cord damage and is blind in one eye due to glaucoma. On November 15, 2005, Hansen filed suit against Harper in the United States District Court for the District of Utah, in case number 05-cv-00940. This federal lawsuit sought damages based on three alleged violations of ERISA committed by Harper. On May 8, 2007, the district court granted summary judgment in Hansen's favor on liability. Hansen v. Harper Excavating, Inc., No. 2:05-cv-00940-DAK, Mem. Decision and Order at 9, Doc. 99 (D. Utah. May 8, 2007) [Hansen I].[2] In March 2008, after a hearing on

---

[2] We hereby take judicial notice of the documents from this earlier case in the electronic database of the U.S. District Court for the District of Utah, as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). We note that we may take this action "whether

Continued . . .

damages, the district court awarded Hansen a total of $57,182.33 to recompense his medical expenses, and $102,056.88 in attorney's fees and costs. Id., Doc. 127 at 6-7. Harper did not appeal this award.

During discovery in the federal lawsuit, Hansen learned of the actions of Henderson and Harper noted above. On June 6, 2007 (which is to say, after winning summary judgment in Hansen I but before the award of damages), Hansen filed the instant lawsuit, Hansen II, in the Third Judicial District Court of Salt Lake County, Utah. This suit alleged five causes of action, all brought under Utah state law: (1) fraudulent nondisclosure; (2) negligent misrepresentation; (3) conversion; (4) breach of contract – good faith and fair dealing; and (5) special damages. On August 12, 2007, Harper filed a Notice of Removal of the state-court case with the federal district court, arguing that Hansen's claims were completely preempted by ERISA, and thus federal jurisdiction over the claims existed; shortly thereafter, Harper also filed a motion to dismiss Hansen's claims. Hansen filed an objection to removal (which the district court treated as a motion to remand), a memorandum in opposition to dismissal, and sought leave to amend his complaint to add Henderson as a defendant, as well as to add claims for negligent supervision and vicarious liability against Harper. On April 28, 2008, the district court

---

Cont.

requested or not," under Rule 201(c), and "at any stage of the proceeding," under Rule 201(f).

5

issued an order denying Hansen's motion to remand, dismissing the case on the basis of res judicata, and denying Hansen's motion to amend his complaint as moot.

We conclude that Hansen's claims are not completely preempted by ERISA and the district court erred in denying Hansen's Request to Remand. Accordingly, we also vacate the district court order dismissing Hansen's complaint on the basis of res judicata.

## DISCUSSION

The district court denied Hansen's request to remand the case to state court, holding that his claims are completely preempted by ERISA. We review this decision de novo. Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1153 (10th Cir. 2004) ("We review de novo the question of whether Plaintiffs' state law claims are completely preempted.").

### I. Hansen's Claims Are Not Completely Preempted by ERISA

The jurisdiction of the federal courts is limited by Article III of the Constitution and by statutes passed by Congress. A case that is filed in state court may be removed from state to federal court at the election of the defendant, but only if it is one "of which the district courts of the United States have original jurisdiction," which is to say if federal subject-matter jurisdiction would exist over the claim. 28 U.S.C. § 1441(a). Under the well-pleaded complaint rule, in order to invoke federal question jurisdiction under 28 U.S.C. § 1331 and thus to be removable on that basis, a federal question must appear on the face of the plaintiff's complaint; that the defendant possesses a federal defense is not sufficient to invoke federal question jurisdiction. Felix, 387 F.3d at 1154.

6

Generally, the plaintiff is the master of his complaint, and if he files in a state court pleading only state-law causes of action, the case is not removable to federal court based on federal question jurisdiction. Id. (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)).

The Supreme Court, however, has recognized an exception (or "independent corollary") to the well-pleaded complaint rule for a narrow category of state-law claims that can independently support federal jurisdiction and removal. Felix, 387 F.3d at 1154. These claims are "completely preempted" because they fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area. Id. at 1154-55. Unlike ordinary preemption, which is a federal defense to a state-law claim under the Supremacy Clause of the Constitution that does not render a state-law claim removable to federal court, complete preemption makes a state-law claim "purely a creature of federal law," and thus removable from state to federal court from the outset. See id. (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23-24 (1983)).

The Supreme Court has recognized only a few federal statutes that so pervasively regulate their respective areas that they have complete preemptive force; ERISA is one. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 67 (1987). Section 502(a) of ERISA[3] authorizes civil actions "(1) by a participant or beneficiary . . . (B) to recover benefits due

_____

[3] Throughout this opinion, we will refer to sections of ERISA by their ERISA section numbers, e.g. § 502, rather than their U.S. Code designations, e.g. 29 U.S.C. § 1132.

7

to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B). Under Taylor, a state-law suit that falls within the scope of this section may be removed to federal court via complete preemption.

As to when a claim falls within the scope of ERISA § 502(a), the Supreme Court in Aetna Health Inc. v. Davila held:

> [W]here the individual is entitled to such [claimed] coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. 200, 210 (2004) (citation omitted). Therefore, if a state-law claim is for benefits due or claimed under an ERISA-regulated plan, or to enforce or clarify rights under a plan, and no legal duty independent of ERISA is implicated in the claim, then the state-law suit falls within § 502(a) and may be removed to federal court.

In addition to the complete preemption created by 502(a), ERISA contains a separate provision, § 514(a), that substantively preempts state laws: "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This provision, however, creates only ordinary—rather than complete—preemption. That is to say, it creates a federal defense of preemption to a substantive state-law claim that may be asserted in either state or

8

federal court, but it does not of its own force create <u>federal jurisdiction</u>. Only § 502(a) of the statute has complete preemptive force. <u>See generally</u> <u>Felix</u>, 387 F.3d at 1156-58.

Complete preemption under ERISA, however, is limited to claims brought under § 502(a), and that provision, in turn, is limited by its terms to claims "by a participant or beneficiary" of an ERISA-regulated plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B). Thus, in <u>Franchise Tax Board</u>, the Supreme Court declined to hold a claim by a state government against an ERISA-regulated plan completely preempted, because a state government was not a "participant or beneficiary" under ERISA: "ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries[4] with an express cause of action . . . . A suit for similar relief by some other party does not 'arise under' that provision." 463 U.S. at 27. Thus, if the party seeking state-court relief is not a "participant or beneficiary" under an ERISA plan, he or she could not have brought suit under § 502(a)(1)(B) of the statute, and thus any state law claim brought by such a person would not be completely preempted.

ERISA defines both "participant" and "beneficiary." <u>See</u> ERISA § 3(7)-(8). A participant is

---

[4] "Fiduciaries" may file suit under § 502(a)(3), for equitable relief, but not under § 502(a)(1), for damages due to the denial of benefits. Fiduciary status, therefore, is not relevant to this appeal.

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

Id. § 3(7). A beneficiary is an individual designated by a participant to receive benefits under a plan. Id. § 3(8). Neither party asserts that Hansen is a beneficiary, and so we will analyze his claim purely on the basis of his status as a participant.

The Supreme Court has further construed the term "participant" to include "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (internal citations, quotation marks, and alterations omitted). The Firestone Court further elaborated that "to establish that he or she 'may become eligible' [per § 3(7)'s definition of participant] for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Id. at 117-18. Finally, "[a] former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits . . . simply does not fit within the phrase 'may become eligible.'" Id. at 118 (alteration omitted).

The requirement that a litigant have standing under § 502(a) in order for his or her complaint to be removable under complete preemption has a jurisdictional dimension.

10

"The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties" outlined in § 502. Franchise Tax Bd., 463 U.S. at 21. "Therefore, the requirement of § 502 is both a standing and a subject matter jurisdictional requirement." Felix, 387 F.3d at 1160 n.14 (internal quotation marks omitted). Thus, the subject-matter jurisdiction of the district court depends on whether Hansen would have had standing to bring his suit under § 502(a) of ERISA. And in order to have standing, the ERISA claimant must fall within one of the following categories: (1) an employee currently in covered employment, Firestone, 489 U.S. at 117; (2) an employee reasonably expected to be in covered employment, id.; (3) a former employee with a reasonable expectation of returning to covered employment, id.; or (4) a former employee with a colorable claim to vested benefits, which is to say a colorable claim that (a) he or she will prevail in a suit for benefits, or (b) his or her eligibility requirements will be fulfilled in the future, id. at 117-18.

A. **ERISA Standing in a § 502(a)(1)(B) Action Is Determined as of the Time of Filing the Complaint**

In order to determine whether Hansen would have standing to bring this suit under ERISA—and thus whether his claims might be completely preempted—we must first determine at what point in time we assess ERISA standing. Two possibilities suggest themselves: either when the wrongful behavior occurred, or when the complaint was filed. This distinction matters; Hansen appears to have been a current employee reasonably expected to be in covered employment at the time of Harper's wrongful

11

behavior (which is to say Harper's failure to tell Hansen of the proper enrollment window), but by the time he filed the complaint, he was a former employee with no reasonable expectation of returning to covered employment or with a colorable claim to vested benefits under the plan, and thus he would not have had ERISA standing to sue. Our cases do not expressly answer the question, but they suggest that standing is assessed at the time the complaint is filed. We agree, and hold that ERISA standing is assessed as of the filing of a complaint.

In Felix, for example, we considered the state-law tort claims of a group of former Lucent Technologies employees who claimed that they had been fraudulently induced to take early retirement, and thus missed out on a more generous retirement plan offered by the company shortly thereafter. 387 F.3d at 1151-52. We held that the plaintiffs were former employees with no reasonable expectation of returning to covered employment; moreover, we held that they did not have a colorable claim to vested benefits, because the terms of the more generous later-offered plans expressly excluded the plaintiffs. Id. at 1161-62. We noted that "Plaintiffs are simply not claiming that, at the time of their suit, they were eligible or likely to become eligible for the additional benefits under the terms of any welfare or pension plan." Id. at 1162 (emphasis added, additional emphasis omitted). If the Felix court had considered the relevant timeframe to be when the wrongful behavior occurred—which, in that case, was when the employees were fraudulently induced to retire—the plaintiffs would have been considered current employees, and the court's analysis of whether the plaintiffs were "likely to become

12

eligible" for the later-offered plan would have been very different. But because the court examined the plaintiffs' position vis-à-vis the ERISA plan "at the time of their suit," it answered the ERISA standing question in the negative. See also Chastain v. AT&T, 558 F.3d 1177, 1181-84 (10th Cir. 2009) (rejecting "but for" ERISA standing for plaintiffs predicated upon a claim that plaintiffs would have been participants in an ERISA plan but for defendants' wrongdoing).

Varity Corp. v. Howe, 516 U.S. 489 (1996), is not to the contrary. Varity was not an ERISA standing case, but rather was a direct action for breach of fiduciary duty under § 502(a)(3); the parties had conceded that the plaintiffs in that case were participants, and thus had standing under ERISA. Id. at 508.[5] The Supreme Court did consider the text of § 502, but it did so only in order to answer the question whether § 502(a)(3) authorized an action by participants seeking individual equitable relief, or whether it authorized only actions seeking equitable relief on behalf of the plan itself. Id. at 507 ("The remaining question before us is whether or not the remedial provision of ERISA that the beneficiaries invoked, ERISA § 502(a)(3), authorizes this lawsuit for individual relief."). Varity did not address at what point ERISA standing is to be assessed.

In a separate portion of its opinion, the Varity Court did examine the state of affairs as of the time of the alleged breach, but that inquiry was unrelated to the standing

---

[5] We went on to observe in Felix that "ERISA provides no cause of action to non-participants who claim they were defrauded out of pension benefits in violation of common law fraud principles." Id. at 1162.

analysis (which, again, was not at issue). In <u>Varity</u>, the plaintiffs' employer, Varity,[6] had urged the plaintiffs to transfer their pensions to Massey Combines, a new spinoff of Varity that, as was later revealed, had been designed by the parent company to fail and default on its obligations. <u>Id.</u> at 492-94. This, according to the plaintiffs, constituted a breach of Varity's fiduciary duty under ERISA as the plan administrator. <u>See</u> ERISA § 404(a) (requiring fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries"). Varity, however, argued that when it made the representations to the plaintiffs urging them to transfer their pensions to Massey Combines, it had been acting as their employer, rather than as the plan administrator, and thus had been under no ERISA-imposed fiduciary duty. <u>Id.</u> at 498. The Court examined the statements made in context, and determined that, at the time it made the statements, Varity was acting as a plan administrator, and was thus under a fiduciary duty imposed by ERISA. <u>Id.</u> at 503.

But the fact that the <u>Varity</u> Court looked to the time of the alleged breach to determine whether Varity owed a fiduciary duty to the plaintiffs does not mean that we should look to the time of the alleged breach by Harper to determine whether Hansen has standing to sue under ERISA. The question of <u>Varity</u>'s fiduciary status was an element of the substantive claim in that case, and so of course the Court had to examine it as of

[6] The Supreme Court referred to two of the petitioners, Varity and Massey-Ferguson, interchangeably, as the district court had determined that they were alter egos of one another. <u>Varity</u>, 516 U.S. at 493. For simplicity, we will refer to the petitioners in the case simply as Varity.

14

the relevant time, i.e. when the representations were made. But questions that go to the merits of a substantive claim do not precede the question of the plaintiff's standing, and standing is assessed as of the time of filing of the complaint. Thus, Varity is not instructive on the issue of when standing is assessed, and we will continue to follow Felix, as Tenth Circuit precedent, in holding that standing to sue under ERISA is assessed as of the filing of the complaint.[7]

Finally, because ERISA standing is a matter of our subject-matter jurisdiction, examining it as of the time of filing of the complaint is consonant with our treatment of other subject-matter jurisdictional requirements. See Grupo Dataflux v. Atlas Global Grp, L.P., 541 U.S. 567, 571 (2004) (reaffirming rule assessing diversity of citizenship as of when complaint is filed); see also Mullan v. Torrance, 22 U.S. 537, 539 (9 Wheat) (1824) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought . . . ."). In particular, when assessing standing under Article III, we do so as of the time the lawsuit is filed. See Smith v. Rockett, 522 F.3d 1080, 1081 (10th Cir. 2008) ("Standing is assessed as of the time the action was commenced." (citing Lujan v.

_____

[7] Dicta in Varity in fact supports our conclusion here, albeit indirectly. At the end of that opinion, the Court observed that the plaintiffs could not have brought suit under ERISA § 502(a)(1)(B) because, as "they were no longer members of the [Varity] plan," they had no benefits due them under the plan, and could not thus maintain suit under § 502(a)(1)(B). 516 U.S. at 515. In order to reach this conclusion, the Court could not logically have been looking at plaintiffs' standing under § 502(a)(1)(B) as of the time of Varity's breach, because as of that time, none of the plaintiffs had yet transferred their pensions to Massey Combines, and thus at the time of the breach they were still members of Varity's plan. The Court did not, however, examine this point closely because, as noted above, Varity was not an ERISA standing case.

15

<u>Defenders of Wildlife</u>, 504 U.S. 555, 570 n.5 (1992))). And our conclusion that ERISA standing is assessed as of the time of filing is consonant with the conclusions of other courts to have addressed the issue. <u>See</u>, <u>e.g.</u>, <u>Crawford v. Lamantia</u>, 34 F.3d 28, 32 (1st Cir. 1994) (noting that not only must plaintiff have ERISA standing when the complaint is filed, but that he must continue to have standing throughout the pendency of the action); <u>Harris v. Provident Life & Accident Ins. Co.</u>, 26 F.3d 930, 933 (9th Cir. 1994) ("Whether a person is a plan participant must be decided as of the time of the filing of the lawsuit.").

Therefore, we hold that standing to sue under ERISA is assessed as of the time the complaint is filed.

**B.      There Is No "But-For" ERISA Standing in the Tenth Circuit**

Having established the relevant timeframe, we now pause briefly to refute an exception that could be relevant to this case. At the heart of Harper's argument for why Hansen has standing under ERISA in this case is the notion that, but for the misdeeds of Harper, Hansen <u>would</u> <u>have</u> <u>been</u> a participant in the ERISA-regulated plan. This may be a compelling argument in the abstract, but this circuit has repeatedly and unequivocally rejected the "but-for" exception to the ERISA standing requirement adopted by several other circuits. "[T]he First, Second, Fifth, Sixth, and Eighth Circuits have held that former employees may sue under ERISA if they make a 'but for' claim" that they would have been participants had their employers not engaged in wrongful behavior. <u>Felix</u>, 387 F.3d at 1159. The Third Circuit also so holds. <u>See</u> <u>Leuthner v. Blue Cross & Blue</u>

16

Shield, 454 F.3d 120, 129 (3d Cir. 2006). "This court, however, has expressly rejected the doctrine of 'but for' standing." Chastain, 558 F.3d at 1183; see also Felix, 387 F.3d at 1159-61; Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1536 (10th Cir. 1993); Mitchell v. Mobil Oil Corp., 896 F.2d 463, 474 (10th Cir. 1990). We are joined in that rejection by the Fourth and Eleventh Circuits. See Sanson v. Gen. Motors Corp., 966 F.2d 618, 619, 621 (11th Cir. 1992); Stanton v. Gulf Oil Corp., 792 F.2d 432, 434 (4th Cir. 1986).

Therefore, if we are to find ERISA standing at all, it may not be based on the notion that, but for the wrongful behavior of Harper and Henderson, Hansen would have been a participant under the plan.

## C. Hansen Would Not Have Had Standing to Sue Under § 502(a)(1)(B)

With the preceding legal questions answered, it becomes a simple matter to conclude that Hansen would not have had standing to bring his claim under ERISA, and therefore to conclude that his claims are not completely preempted by that law. In order to have standing under ERISA, Hansen must have been a participant of the plan at the time he filed his complaint, which means he would have needed to fall into one of the four categories outlined above, drawn from the Supreme Court's Firestone opinion. Those four categories, once again, are: (1) an employee currently in covered employment; (2) an employee reasonably expected to be in covered employment; (3) a former employee with a reasonable expectation of returning to covered employment; or (4) a former employee with a colorable claim to vested benefits, which is to say a former

17

employee with a colorable claim that (a) he will prevail in a suit for benefits, or (b) his eligibility requirements will be fulfilled in the future.  Firestone, 489 U.S. at 117-18.

The first two categories—a current employee in covered employment and a current employee reasonably expected to be in covered employment—cannot apply to Hansen, because as of when he filed suit in this case, June 2007, he was no longer a current employee of Harper Excavating.

To have standing, Hansen must therefore fall within one of the latter two categories, for former employees.  As of June 2007, we cannot say that Hansen had any expectation, reasonable or otherwise, of returning to covered employment; nothing in the record, nor in the submissions of the parties, gives any hint that either Hansen or Harper ever expected to resume their employment relationship.

To have standing as a former employee, Hansen must have a colorable claim to vested benefits under one of the two subdivisions of the fourth category.  The record shows that Hansen has had no involvement with Harper of any kind (other than his lawsuits) since he left his employment in April 2004.  Therefore, even if there are some eligibility requirements that he has not yet fulfilled, there seems to be no tenable argument that he will fulfill any such requirements in the future.  We are, thus, left with the final option that Hansen might be a former employee with a colorable claim that he will prevail in a suit for benefits.  But, of course, Hansen has already prevailed in a suit for benefits in Hansen I; he thus no longer has a "colorable claim" that he will do so in the future.  Therefore, Hansen is not a former employee with a colorable claim that he

18

will in the future prevail in a suit for benefits.  He is a "former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits [who]  simply does not fit within the phrase 'may become eligible,'" Firestone, 489 U.S. at 118 (alteration omitted), and thus he has no standing under ERISA.

Thus, under the statute as interpreted in Firestone and Felix, Hansen does not have standing to sue under ERISA, and his claim cannot be completely preempted.[8]

## II.    Judicial Estoppel Does Not Apply to Create Subject-Matter Jurisdiction

Finally, Harper argues that, even if, as a strictly analytical matter, Hansen does not have ERISA standing now and did not have it at the time of Hansen I, we should apply the principle of judicial estoppel to prohibit him from arguing that he has no standing now, based on the position he took in Hansen I.  In essence, it is Harper's position that Hansen's assertions, accepted by the court in Hansen I, should preclude Hansen from arguing—and us from concluding—that he does not have ERISA standing here, via operation of judicial estoppel.  We disagree.

---

[8] Even if Hansen did have standing to assert a complete preemption claim in this suit as a participant or beneficiary under an ERISA plan, it is doubtful this present suit would satisfy the Davila requirements for complete preemption of claiming (1) benefits under the plan where (2) "there is no other independent legal duty that is implicated by a defendant's actions."  However we do not need to address these Davila issues because of our ruling on standing.

19

The principle of judicial estoppel "is based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" Bradford v. Wiggins, 516 F.3d 1189, 1194 (10th Cir. 2008) (per curiam) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). The doctrine applies when (1) a party takes a position clearly inconsistent with an earlier-taken position; (2) adopting the later, inconsistent, position would create an impression that either the earlier or the later court was misled; and (3) allowing the party to change their position would give them an unfair advantage. See Johnson v. Lindon City Corp., 405 F.3d 1065, 1069 (10th Cir. 2005). This circuit applies the doctrine "both narrowly and cautiously." Bradford, 516 F.3d at 1194 n.3. Further, we note, as have other circuits, that judicial estoppel is an affirmative defense. See, e.g., Lozano v. Ocwen Fed. Bank, FSB, 489 F.3d 636, 638 (5th Cir. 2007); Liberty Mut. Fire Ins. Co. v. Scott, 486 F.3d 418, 421-22 (8th Cir. 2007); Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1152 (11th Cir. 2006); Altman v. Altman, 653 F.2d 755, 758 n.1 (3d Cir. 1981).

The Eighth Circuit recently faced an analogous situation in Gray v. City of Valley Park, Missouri., 567 F.3d 976, 980-82 (8th Cir. 2009). In that case, the appellant had argued in the district court that a municipal ordinance threatened to do her imminent injury, and so she had Article III standing to bring her case. In what the Eighth Circuit characterized as "an unlikely turn of events," after losing a motion for summary judgment she argued on appeal that the ordinance did not threaten her imminent harm, and thus that she had never had standing, and so the district court had no subject-matter jurisdiction

20

over the case. Id. at 980. The appellees argued that the appellant should be judicially estopped from arguing that she did not have standing, based on her assertions to the district court. The court disagreed. Even though "it would seem at first blush that this is just the sort of case to which judicial estoppel must apply," the court declined to do so. Id. at 982. The court observed:

> In the end, we must have Article III jurisdiction to entertain any claim even though the change in tactics in this case does seem to result in the sort of extreme perversion of the judicial process that normally justifies the use of judicial estoppel. Most critically, we have failed to find any precedent, and the [appellee] cites to no authority, supporting the application of this doctrine in the face of an alleged jurisdictional default.

Id. Rather than apply judicial estoppel, the court conducted its own independent analysis of Article III standing, concluded that the appellant did, in fact, have standing, and affirmed the district court. Id. at 982-87.

Similarly, here, Harper's argument asks us to refrain from inquiring into whether Hansen actually had ERISA standing, and rather to apply the doctrine of judicial estoppel and hold that he is precluded from arguing that he did not. Like the Eighth Circuit, we are unwilling to "forge ahead on blind principle without jurisdiction to do so." Id. at 982. In our view, complete preemption is meant to be a narrow exception to the well-pleaded-complaint rule, and we are not inclined to widen it by holding that a party may establish subject-matter jurisdiction based on complete preemption via judicial estoppel. As analyzed above, Hansen would not have standing under ERISA to bring his present suit, notwithstanding the outcome in Hansen I. Given the subject-matter jurisdictional

21

element of ERISA standing, we cannot simply ignore this fact, and allow judicial estoppel to substitute for subject-matter jurisdiction. Therefore, we deny this argument.[9]

**CONCLUSION**

Hansen has already sued Harper for ERISA benefits wrongfully denied, and won. Therefore, as he does not fulfill the requirements of <u>Firestone</u> or <u>Felix</u>, he has no present standing under ERISA to bring the claims currently being asserted in his second suit, and thus his state-court suit cannot be removed to federal court on the basis of the doctrine of complete preemption. Further, his assertions in the prior lawsuit regarding his ERISA status cannot now be used to manufacture subject-matter jurisdiction in this court based on the doctrine of judicial estoppel. We thus REVERSE the district court's conclusion to the contrary, VACATE the order dismissing the complaint, and REMAND with instructions to remand the case to state court.

---

[9] Because judicial estoppel is an affirmative defense, as noted above, we take no position on its applicability to the merits of Hansen's claims, once it is returned to state court.